

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-23-2001

# Virgin Islands v. Albert

Precedential or Non-Precedential:

Docket 00-1604

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Virgin Islands v. Albert" (2001). *2001 Decisions.* Paper 30.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/30

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 23, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 00-1604 and 00-3306

GOVERNMENT OF THE VIRGIN ISLANDS

v.

NICHOLAS ALBERT,
        Appellant

Appeal from the Appellate Division of the
District Court of the Virgin Islands
(D.C. Crim. No. 97-cr-00004)

Argued
December 7, 2000

Before: MANSMANN and ALITO, Circuit Judges, and
FULLAM, District Judge.*

(Filed February 23, 2001)

_____

* The Honorable John P. Fullam of the United States District Court for
the Eastern District of Philadelphia, sitting by designation.

Iver A. Stridiron
Attorney General
Frederick Handleman
Solicitor General
Maureen Phelan Cormier (Argued)
Assistant Attorney General
Department of Justice
48B-50C Kronpindsens Gade
GERS Bldg., 2nd Floor
St. Thomas, U.S.V.I. 00802

 Counsel for Appellee

Andrew C. Simpson, Esquire
 (Argued)
Bryant, Barnes & Simpson, P.C.
47 King Street, 2nd Floor
Christiansted, VI 00820

 Counsel for Appellant

OPINION OF THE COURT

MANSMANN, Circuit Judge.

Nicholas Albert appeals from the judgment of sentence entered after his conviction of first degr ee felony murder and other related offenses. Albert ar gues that he is entitled to a new trial because the trial court abused its discretion when it admitted a videotape of the crime scene which included graphic views of the victim.

After viewing the videotape in its entirety, we conclude that the Territorial Court properly ruled that the probative value of the crime scene videotape outweighed its prejudicial impact. Albert's defense to thefirst degree murder charge was that he was not involved in the murder. The videotaped evidence is to the contrary. Despite its gruesome depictions, its admission was not an abuse of discretion. In addition, assuming the videotape was cumulative of crime scene photos also admitted into evidence, given the other evidence of Albert's guilt, we find that its admission was harmless error . We will, therefore, affirm.

2

I.

On November 24, 1995, Barbara Cromwell arrived at her family's vacation condominium on St. Croix. Cromwell was president of the Board of Directors of the condominium complex and had come to St. Croix to start negotiations with an insurance company and local contractors to reconstruct the premises after extensive damage caused by a hurricane. John Reichert, the owner of another unit and a friend of Cromwell's, also traveled to St. Croix to participate in the discussions.

On November 27, Reichert and Cromwell saw a "little guy" on the premises of the complex looking through an open door of Cromwell's unit and lurking around the condominium property. Reichert told the young man to leave. A little later, Reichert and Cromwell discovered three young men inside one of the condominium units and called the police. One young man ran away. The second, identified as the defendant, 15-year old Nicholas Albert, picked up a rock and threatened Reichert. The third man, later identified as Johnny Kidd, the "little guy" previously sighted on the property, left the area and walked down to the beach followed by Albert.

Reichert and Cromwell spent the evening of November 28 at Cromwell's condo, reviewing insurance papers. Reichert left about 10 p.m. Shortly thereafter, Kidd and Albert crept into Cromwell's second-story unit. The pair searched the apartment and took five to six hundred dollars from Cromwell's purse. They proceeded to rifle through dressers, a suitcase and a storeroom.

Kidd and Albert then moved into the bedroom where Cromwell was sleeping. Kidd took a lighter and started flashing it over Cromwell's face. She woke up screaming. What happened next was the source of differing testimony at trial. According to Albert, Kidd determined that Cromwell should be tied up. Albert testified that he picked up a pair of white shoes, took the shoelaces out and he and Kidd each tied one of her hands to the bed. After Cromwell was tied, Albert went through the dressers in the bedrooms. He then left the room and found a set of keys. He went back into the room and asked Cromwell to point out which key

3

opened the outside gate. Albert left to unlock the gate, returned and removed a television, VCR and stereo from the unit. He testified that Kidd then walked out of the bedroom and said "she dead, you know." Albert saw blood on the wall, left the condominium and loaded Cromwell's car with the fruits of the robbery.

The government's version of events differs. The prosecution theorized that when Cromwell woke up and screamed, one of the intruders slashed at her with a knife while the other blocked her escape by hitting her with a blunt object. Under the government's scenario, while Cromwell attempted to fight off her attackers, she was overcome by a knife stab to her throat, cutting the jugular vein and severing her windpipe back to the neck bone.[1] According to the government, it was after Cromwell's death that Kidd and Albert tied her to the bed, jammed a washcloth into her mouth, taped her face, spread her legs open to expose her genitalia and tossed a pornographic video onto the bed, attempting to stage a sex crime which could deflect suspicion away from them.

An anonymous tip led to the arrest of Kidd and Albert. Albert turned himself in to the police, admitted committing the burglary with Kidd, but blamed the murder solely on Kidd. When arrested, Kidd admitted, "I did it. I was the one. I cut her." He did not name an accomplice. [2]

Albert was charged with First Degree (premeditated) Murder, First Degree (felony) Murder, Burglary, Burglary with Intent to Commit Assault, Conspiracy to Commit Burglary, Kidnaping and Conspiracy to Commit Kidnaping. At trial, the government, over objection by the defense, introduced a videotape of the crime scene which included a

_____

1. The autopsy performed revealed that Cromwell sustained 12 stab wounds, incise wounds, multiple abrasions due to blunt force, and contusions to the face, torso, legs and thighs. The pathologist testified that Cromwell was alive when the wounds were inflicted and that the cause of death was "massive bleeding or hemorrhage shock due to multiple wounds and due to incise wounds of the neck."

2. Kidd was separately tried for the murder of Barbara Cromwell. He was convicted of three counts of burglary and murder, including premeditated first degree murder, and kidnaping.

detailed look at Cromwell's partially naked body tied to the bed with the neck wound revealed. Albert was found guilty on all charges except premeditated mur der.

On December 19, 1996, the fifteen-year old Albert was sentenced to life imprisonment without possibility of probation or parole on the felony mur der count, plus 50 years to be served consecutively on the remaining counts. A notice of appeal to the Appellate Division of the United States District Court of the Virgin Islands was filed. On the issue relevant here, the Appellate Division found that Albert did not properly object to the admission of the videotape of the crime scene; therefore, the Territorial Court did not abuse its discretion in allowing it to be played to the jury.

Albert filed a notice of appeal to our court on March 2, 2000, beyond the 10-day limit set forth in Fed. R. App. P. 4(b). Defense counsel, a self-admitted novice in criminal matters, mistakenly believed and informed Albert that the appeal from the Appellate Division judgment had to be filed within 30, not 10, days. When Albert was notified that the appeal faced possible dismissal due to the jurisdictional defect, he filed a motion for an extension of time to file the appeal on the grounds of excusable neglect. The District Court of the Virgin Islands granted the motion.

The government filed an appeal from the award of the time extension arguing that ignorance of the rules does not constitute excusable neglect. At oral argument, however, the government conceded that caselaw could be interpreted to allow the present appeal to proceed. The government, therefore, abandoned its jurisdictional challenge.

We agree that authority exists for the viability of this appeal. See Pioneer Inv. Servs. Corp. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 391-92 (1993) (interpreting analogous Bankruptcy Rule); United States v. Clark, 51 F.3d 42, 44 (5th Cir. 1995); United States v. Hooper, 9 F.3d 257, 259 (2d Cir. 1993). But see Amatangelo v. Borough of Donora, 212 F.3d 776, 779 (3d Cir . 2000) (discussion of FRAP 4(a)(5)(A)).

Our jurisdiction rests upon 28 U.S.C. S 1291.

II.

The appeal presents a singular issue: did the trial court err in allowing a videotape of the crime scene into evidence because its probative worth was outweighed by its prejudicial impact? We review this ruling under an abuse of discretion standard, United States v. Balter, 91 F.3d 427, 442 (3d Cir. 1996), and will affirm the trial court's determination unless it acted arbitrarily or irrationally. United States v. Universal Rehabilitation Servs., 205 F.3d 657, 669 (3d Cir. 2000).3" `[I]f judicial restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal.' " United States v. Scarfo, 850 F.2d 1015, 1019 (3d Cir. 1989) (quoting United States v. Long, 574 F.2d 761, 767 (3d Cir . 1978)).

After Cromwell's body was discovered, a forensic investigator took photographs, videotaped the scene and collected evidence. The government sought admission of the videotape into evidence. Defense counsel filed a motion in limine to preclude its admission on the gr ounds that it was narrated and because its prejudicial natur e outweighed its usefulness. In defense counsel's words:

> . . . Some of the shots are close ups of the neck area, showing the cut. It's awful. It's not necessary. A lot of what the video tends to portray is an issue. I can only surmise that the Government is using the video to instill horror, to instill punishment, the element of punishment.
>
> They have other ways of presenting the scene to a lay jury. It's my understanding that the Government has two dozen photographs, still photographs, which show the items that they claim are important.

_____

3. We emphasize that our review focuses on the trial court's Rule 403 balancing determination as if not previously heard by the Appellate Division. See Semper v. Santos, 845 F .2d 1233, 1235 (3d Cir. 1998) (second appellate tribunal shall review territorial court's determination using same standard of review applied by Appellate Division); see also Government of Virgin Islands v. Grant, 775 F.2d 508, 510 n.1 (3d Cir. 1985) (propriety of evidentiary ruling by territorial court, affirmed by Appellate Division, decided under Federal Rules of Evidence and reviewed for abuse of discretion).

                    * * *

          So it's not just unduly prejudicial, its cumulative.
          Indeed, for us to sit and watch the video and then turn
          around and have to watch the still photos is a waste of
          time. You have a waste of time element.

The government, for its part, did not pr esent a detailed
argument for the videotape's admission. Its position was
that the tape "showed the apartment and the condition of
the apartment, the condition of the victim and how she was
found, the murder weapon and the items of that nature;
thus, the tape was relevant to contrast Albert's claim that
he did not know what Kidd was doing in the bedr oom." The
government also submitted that the videotape would assist
the jury in understanding the facts of the case, particularly,
in that it supported the portion of Albert's confession
consistent with the government's version of the details of
the crime. The jury could see, by comparing what they had
seen on the videotape to what Albert told the officer, that
Albert participated in Cromwell's murder .

The court viewed the videotape and made the following
ruling:

          THE COURT: Having reviewed the video, the Court
          finds that relevant to the issues of trial,
          in that it depicts the crime scene,
          shows the location of various items of
          evidence, some of which have been
          testified to in court already.

          It also shows the layout of the crime
          scene, the entrance, as well as the
          different rooms and their particular
          positioning. And, obviously, the victim,
          and the injuries, and the resulting
          injuries, in any event, from the crime.

          And, therefore, the only issue befor e the
          Court is the extent of any prejudice to
          the defendant or confusion of the
          issues, et cetera.

          Having viewed the video, the Court also
          finds that the evidence is probative for

                         7

the same reasons mentioned before.

Although the Court finds the video
somewhat long, it's approximately 45
minutes. At this stage, the Court does
not conclude that it's a waste of time,
or amounts to a needless presentation
of cumulative evidence, or that it would
mislead the Jury or confuse the issues.

The Court noticed that the video shows
graphically the injuries to the victim's
neck. Some to her arms and some to
the legs.

The Court, however, does not find the
evidence to be so inflammatory as to
amount to prejudice, which
substantially outweighs the probative
value.

The Court will, therefore, permit the
introduction of the video into evidence.

* * *

[T]he Court would concur with defense
counsel, however, that there are
opinioned narration throughout this
video. And would bar that portion of the
video from being displayed to the Jury.

As the excerpt above demonstrates, the trial judge found
the videotape was relevant to and probative of the issues at
trial and not so inflammatory that its evidentiary value was
dwarfed by its graphic depictions. The judge agreed with
defense counsel, however, that the "opinionated" narration
throughout should be barred from the jury. Accordingly, a
version of the videotaped crime scene, narrated by the
police officer who photographed the scene, was shown to
the jury without the audio. Although the videotape was 45
minutes long, the jury saw a shortened version. During its
presentation, the government fast-forwar ded the tape a
number of times, presumably to avoid irr elevant or
redundant evidence.

8

In its closing argument, the government called upon the jury to examine the videotape to support its view that Albert's participation conformed to the gover nment's theory of the case. The government argued that the videotape depicting Cromwell's defensive wounds evidenced that she put up a fight before she was tied to the bed with the shoelaces. The government then opined that it would have taken more than the diminutive Kidd to subdue Cromwell. Also emphasized was the pristine condition of the shoelaces used to tie Cromwell's wrists to the bed. The government posed the question -- how could the shoelaces used to tie Cromwell be free of blood if the tying occurred before the stabbing as Albert contended?

While deliberating, the jurors asked to see the videotape again. The trial court allowed the second viewing, but instructed the jurors as follows:

> As you will recall, however, the only portion of the video, that has been admitted into evidence -- and, therefore, the only portion that you ar e permitted to consider, as evidence -- is merely what's seen on the video as opposed to the audio and what's said on it. So, we have prepared the television for you. And it would allow you to look at it. But it would not allow you to see the video or to -- to hear, rather, any of the audio or increase the volume in any way.

The record indicates that the volume buttons were taped over to preclude producing an audio portion of the videotape. The defense did not object to either the jurors' request to view the video or the court's pr ecautions concerning the audio portion of the tape. 4

We have examined the entire 45-minutes of the videotape and there is no question that it is gruesome. The concentration on Cromwell's lower body, while

_____

4. The concurring opinion strongly suggests that the court's admonition concerning the audio portion of the videotape went unheeded. We are unwilling to presume juror misconduct in the absence of any evidence of same. In any event, Albert does not assert in his brief that the trial court
erred by failing to take additional steps to pr event the jury from listening
to the audio track of the videotape.

disconcerting, was not unduly protracted and was crucial to show the defensive wounds on Cromwell's body. The videotape was then clearly relevant to demonstrate the government's theory that one small man could not have subdued a struggling Cromwell and have inflicted the massive injuries upon her unassisted. The videotape also bolsters the government's theory that Cr omwell was tied to the bed with the shoelaces after the murder . While the area of the bed surrounding Cromwell's body was blood-soaked, the shoelaces were surprisingly clean. If Cr omwell had been tied to the bed prior to the murder, it is more than probable that the laces would have been splattered with blood. Albert's admission that he took the shoelaces out of the shoes and helped Kidd tie Cromwell, combined with the condition of the shoelaces, is significant evidence of his participation in the murder. Graphic though it may be, the admission of the videotape was significantly pr obative. The trial court's decision to allow the jury to view it cannot be considered arbitrary or irrational.

We next comment on whether the cumulative nature of the videotape rendered its admission unnecessary. There were pictures taken at the crime scene which also depicted the condition of the bedroom, the body, and the shoelaces. Even if we were to determine that the pictures rendered the videotape cumulative and, therefore, diminished in probative worth, we would not grant a new trial. The error which may have been caused by the admission of the videotape was harmless given the other evidence of Albert's guilt, established primarily through his own testimony.

For these reasons, we will affirm the Judgment in a Criminal Case entered by the District Court.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

10