**MORRIS HUGGINS, Appellant**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

D.C. Crim. App. No. 2004/112

District Court of the Virgin Islands

Division of St. Croix

December 9, 2005

*For Appellant*: SCOT MCCHAIN, ESQ., St. Croix, U.S.V.I.

*For Appellee*: MAUREEN PHELAN, AAG, St. Thomas, U.S.V.I.

FINCH, *Chief Judge, District Court of the Virgin Islands*; GOMEZ, *Judge of the District Court of the Virgin Islands*; and HOLLAR, *Judge of the Superior Court, Sitting by Designation.*

## MEMORANDUM OPINION

(December 9, 2005)

Appellant Morris Huggins ["Huggins" or "appellant"] appeals from his conviction in the Superior Court for third degree assault and possession of a dangerous weapon during a crime of violence. He now asks this Court to review:

> 1) Whether his trial counsel was ineffective in failing to call an alibi witness based on the appellant's recommendation;
>
> 2) Whether the trial judge erred in allowing what the appellant terms a "gruesome" picture of the victim's injuries into evidence over the defense's objections;
>
> 3) Whether the trial judge erred in allowing one of the victims, Roxanne Moolenaar, to speculate on who directed and controlled the actions of a co-defendant during the attack;
>
> 4) Whether the appellant was afforded a public trial, where at least three members of the public were denied access to the trial.

For the reasons which follow, this Court will decline to reach the appellant's claims regarding his counsel's trial representation and the denial of a public trial. We will, further, reject the appellant's arguments in all other respects and enter an order affirming his conviction.

621

## I. STATEMENT OF FACTS AND PROCEDURAL POSTURE

Israel Viera ("Viera") worked at St. Croix Radiator, a business owned by his father, Samuel Viera ("Samuel"). That business is located in Orange Grove on St. Croix, near the Casino Control Commission and the District Court. [Joint Appendix ("J.A.") at 81]. Viera also resided above the business with his companion, Roxanne Moolenaar ("Moolenaar"). [J.A. at 87].

Huggins and Viera were friends, and Huggins worked at St. Croix Radiator for some time. However, several weeks prior to the incident leading to his conviction, Huggins stopped working with Viera. [J.A. at 91]. Sashi Seetaram ("Seetaram"), a co-defendant in this case, also worked with Huggins at St. Croix Radiator and left around the same time he did. [J.A. at 94-85; 168]. It was also developed at trial that, after leaving Samuel's employ, Huggins was responsible for initiating an investigation against Samuel's business by the Department of Consumer and Licensing Affairs, suggesting he did not part company with St. Croix Radiator on good terms. [J.A. at 106, 256-60]. There was also reference to a police report that may have been lodged against Huggins by Samuel.

On June 2, 2003, Viera was working in the garage area of the business when he saw a small blue car drive into the yard carrying Huggins, Seetaram and an unknown man who was the driver. [J.A. at 118]. Viera testified at trial that Huggins walked around and then confronted him, accusing him of having filed a complaint with the police. He testified that Seetaram approached him with a pipe and struck him, after being instructed by Huggins to do so. [J.A. at 119; 171].

As Huggin's verbal threats and cursing escalated, Moolenaar left the upstairs residence and went to the garage/business area. She was dialing the police from a phone in the garage when she witnessed Seetaram strike Viera the first blow with a jackhandle. [J.A. at 171-172]. Moolenaar also testified that as she called police, Huggins struck her in the face with a piece of pipe. [J.A. at 172]. After realizing that Huggins had "bust down" her face, Moolenaar engaged him in a fist-fight and struggled with him until the third unidentified man, who all the witnesses identified as the driver of the blue car, joined Huggins in beating Moolenaar into submission. [J.A. at 172-73]. All three men then resumed beating Viera, as Moolenaar lay witnessing the entire incident.

622

After the incident, Moolenaar said the men reentered the car—Seetaram in the back seat, Huggins in the front passenger seat, and the unknown man as driver—and calmly drove out of the area. [J.A. at 207-08]. As the men were driving out of the yard, Samuel, who had left St. Croix Radiator sometime after 9:00 a.m., was returning from running errands and saw the blue car leaving the business. [J.A. at 88-90]. He identified Huggins and Seetaram as its passengers, although he could not identify the driver. As he entered the business, he found Viera and Moolenaar laying injured; police and medical personnel arrived moments later.

Samuel estimated he arrived back at the business sometime after 10:00 a.m. and just before 11:00 a.m. [J.A. at 89-90]. The evidence at trial showed police arrived at approximately 10:40 a.m., [J.A. at 25], and the ambulance was called at approximately 10:50 a.m. and arrived at 10:59 a.m. [J.A. at 71-73].

At trial, the defense called Consumer and Licensing Affairs Director, Alvin Alli Paul, as an alibi witness to testify that both Huggins and Seetaram had been in his office "a little after 10" and had remained there until approximately 10:30 on the day of the incident. [J.A. at 255-56]. That office is also in Estate Orange Grove, just a short distance from the scene of the crime.

Huggins was charged with two counts of third degree assault and two counts of possession of a dangerous weapon during a crime of violence. He was convicted by jury of one count of each offense and sentenced to eight years' incarceration. This timely appeal followed.

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

This Court has jurisdiction to consider final orders or judgments entered by the Superior Court in criminal cases. *See* The Omnibus Justice Act of 2005, Act No. 6730, § 54 (amending Act No. 6687 (2004), which repealed 4 V.I.C. §§ 33-40, and reinstating appellate jurisdiction in this Court); Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a.[1]

---

[1] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

We generally review findings of fact for clear error and afford plenary review to the trial court's determinations of law and claims implicating rights under the constitution. *See Poleon v. Government of the V.I.*, 184 F. Supp. 2d 428 (D.V.I. App. Div. 2002); *Bryan v. Government of the V.I.*, 150 F. Supp. 2d 821, 827 n.7 (D.V.I. App. Div. 2001).

The trial court's admission of evidence is reviewed for abuse of discretion, except to the extent its ruling is based on an interpretation of the federal rules or legal precepts, in which case our review is plenary. *See Government of V.I. v. Albert*, 241 F.3d 344, 347 (3d Cir. 2001).

### B. Whether trial counsel's failure to call an alibi witness provided by the appellant amounted to ineffective assistance of counsel.

In reviewing an attorney's representation at trial, we review the trial court's factual findings, but must make an independent judgment on whether those facts constitute constitutionally ineffective assistance of counsel. *See Government of V.I. v. Weatherwax*, 77 F.3d 1425, 1430-31 (3d Cir. 1996) (citing *McAleese v. Mazurkiewicz*, 1 F.3d 159, 166 (3d Cir.), *cert. denied*, 510 U.S. 1028, 114 S. Ct. 645, 126 L. Ed. 2d 603 (1993)).

Whether an attorney's representation was effective is to be viewed based on what is reasonable under prevailing professional standards and practices. *See Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Such representation is entitled to a strong presumption in favor of competence, which the appellant may overcome by establishing: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 689-90; *see also, George v. Sively*, 254 F.3d 438, 443, 43 V.I. 351 (3d Cir. 2001). The prejudice prong rests on a determination that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Rivera v. Government of V.I.*, 981 F. Supp. 893, 900, 37 V.I. 68, 79 (D.V.I. App. Div. 1997) (citing *Strickland*, 466 U.S. at 694).

Because of the factfinding required to make a determination of the reasonableness of an attorney's trial decisions, such claims are ordinarily not cognizable on direct appeal, but must be raised in a collateral proceeding. *See id.* Only where the reviewing court determines that it has before it an adequate record from which to determine the issue, without

the need for an evidentiary hearing, can ineffective assistance of counsel claims be heard for the first time on appeal; otherwise, such claims are more appropriately brought in a collateral proceeding. *See Government of V.I. v. Zepp*, 748 F.2d 125, 133 (3d Cir. 1984). This is not the exceptional case that would permit such immediate review.

Appellant contends his counsel was ineffective in failing to call a second alibi witness whom he claims would have testified that both the appellant and his co-defendant were at Metro Motors buying parts at the time of the crime and who would have also testified that witness was driving with the two men in a gray or brown Toyota Corolla and not the blue Honda Accord reportedly used in the crime. In support thereof, Huggins submitted on the appellate record affidavits from Huggins and the witness to that effect, and a copy of a sales slip from Metro Motors. [Supplemental Joint Appendix (Supplemental J.A.) at 4-9]. None of those documents were considered by the trial court.

█ In this instance, there were no facts developed below surrounding the attorney's decision not to call the purported alibi witness, and we cannot readily determine the basis for the attorney's decision in that regard. Moreover, the affidavits and other evidence submitted on the appellate record cannot be considered here, having not been passed upon by the trial court. *See Government of V.I. v. Felix*, 85 Fed. Appx. 288 (3d Cir. Dec. 23, 2003). Accordingly, our review of this issue would be inappropriate.

## C. Whether the trial judge erred in admitting a picture of the victim's injuries into evidence over the defense's objections.

We must next decide whether the court erred in admitting a photograph of one of the victims, which showed injuries to her face.

██ The mere fact that a photo depicts a gruesome crime does not render its admission erroneous, where it is otherwise probative of a relevant fact at trial. *See Albert*, 241 F.3d at 347; *see also, Lesko v. Owens*, 881 F.2d 44, 55-61 (3d Cir. 1989). In assessing its admissibility, the trial court must conduct a balancing analysis under Federal Rule of Evidence 403 to determine whether its probative value is outweighed by the danger of undue prejudice. Where the trial court's determination involved a balancing analysis under Rule 403, we review for abuse of discretion, and we will not disturb the trial court's determination unless we determine it acted "arbitrarily or irrationally." *Albert*, 241 F.3d at 347

(citations omitted); *see also Government of V.I. v. Pinney*, 967 F.2d 912, 917-18, 27 V.I. 412 (3d Cir. 1992) (noting that trial court's balancing analysis is rarely to be disturbed).

Because of the unique position of the trial court making a Rule 403 determination and assessing the prejudicial impact of the evidence in view of the entire proceedings, reviewing courts are loathe to disturb its Rule 403 determinations unless the resulting prejudice is of constitutional magnitude. *See Lesko*, 881 F.2d at 55. Indeed, this circuit has noted that, "[I]f judicial restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal." *Albert*, 241 F.3d at 347 (quoting *United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir. 1988); *United States v. Long*, 574 F.2d 761, 767 (3d Cir. 1978)).

■ Under this standard, the trial court's Rule 403 determination is sustainable if the evidence had a legitimate purpose and there was not "an overwhelming probability" that the jury would have been "unable to follow the limiting instructions," or "a strong likelihood" that the evidence would be "devastating" to the defendant. *Government of Virgin Islands v. Albert*, 89 F. Supp. 2d 658, 664, 42 V.I. 184 (D.V.I. App. Div. 2000) (quoting *United States v. Bradley*, 173 F.3d 225, 230 (3d Cir. 1999); *United States v. Vaulin*, 132 F.3d 898, 901 (3d Cir. 1997)), *aff'd*, 241 F.3d 344 (3d Cir. 2001). Thus, the touchstone of a Rule 403 determination hinges on whether the evidence unfairly prejudiced the defendant, such that it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *Lesko*, 881 F.2d at 55 (noting that ("[u]nfair prejudice is measured by the degree to which a jury responds negatively to some aspect of the evidence unrelated to its tendency to make a fact in issue more or less probable") (citations omitted).

■ The challenged photograph shows a profile of Moolenaar which reflects the injury to her face. The photograph reflects some blood in the area of her wound. Having viewed the original photo, listed as Exhibit 2-D in the trial record, we cannot conclude the trial court abused its discretion in its admission. The photograph of Moolenaar's wounds were probative of the fact and extent of her injuries and the nature of the crime. Moreover, the trial court denied the Government's attempt to introduce other photos reflecting the same injury, and permitted the

626

admission of only 2-D, given its probative value. We find no abuse of discretion.

## D. Whether the trial judge erred in allowing one of the victims, Roxanne Moolenaar, to speculate on who directed and controlled the actions of a co-defendant during the attack.

■ Lay witnesses may, under Federal Rule of Evidence 701, testify in the form of opinions or inferences which are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. The rationale for the acceptance of such opinion testimony is that it provides a shorthand report of the witness' observations leading to the relevant conclusion, and leaves the witness free to speak in ordinary language that might prove more helpful to the jury. *See Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Engineering*, 57 F.3d 1190, 1194 (3d Cir. 1995); *see also Government of V.I. v. Knight*, 989 F.2d 619, 629-30 (3d Cir. 1993).

■ The requirement that such opinions be based on the witness' firsthand observation and perceptions provides some assurance that the testimony is based on firsthand knowledge "of the factual predicates" underlying the conclusions. *Knight*, 989 F.2d at 629-30 (citing FED. R. EVID. 701 advisory committee notes). The relative strength of the witness' conclusions, in light of those observations, may then be properly tested on cross-examination. *See id.* Such testimony is particularly helpful for a witness testifying, for example, to another's mental state, motives, or similar abstract or intangible concepts. *See Knight*, 989 F.2d 619, 28 V.I. 249 (witness' testimony, based on observed circumstances, regarding defendant's intent to shoot the victim held proper); *Asplundh*, 57 F.3d at 1196 (noting difficulty in describing traits such as drunkenness, excitement, anger, nervousness, and the like, through descriptive means) (citations omitted); *compare Alexis v. McDonald's Restaurants of Massachusetts, Inc.*, 67 F.3d 341, 348 (1st Cir. 1995) (finding that conclusion that conduct toward plaintiff was motivated by "racial animus" was supported by facts in the record only as to one defendant who had made apparently racial statement in referring to the plaintiff's family; however, no factual predicate for that conclusion as to other defendants).

627

Huggins challenges Moolenaar's statements at trial to the effect that he had directed the actions of Seetaram during the attack. The challenged statement was as follows: "But the whole thing if they had the tape like how they does do in the states, you would have hear (Huggins) telling Shashi what to do. He is like a gopher. Anything he tell he to do, he does do it." [J.A. at 174]. This statement, Huggins contends, improperly permitted the victim to speculate regarding the co-defendant's motive in attacking Viera. We disagree.

Moolenaar testified that she knew Seetaram because Huggins had brought him to the shop to work with Huggins. [J.A. at 168]. She also testified to witnessing the entire incident. In describing the incident, Moolenaar testified that Huggins had started the initial confrontation, accusing Viera of having made a complaint to the police, and had threatened to beat Viera. [J.A. at 169-70]. She noted that during that initial confrontation, Huggins was the most vocal and, as he was cursing, Seetaram stayed on the side and "wasn't doing nothing." [J.A. at 199]. She additionally testified that, as she was on the phone dialing 911, she heard Huggins direct Seetaram, who was holding a jackhandle, to hit Viera: "Shashi (Seetaram) had a long jackhandle. So, Duke (Huggins) tell he, hit he motherskunt, de man. Hit he motherskunt ... And with that there, Shashi take up the pole and he hit Israel across there, the first lash." [J.A. at 171].

 Given Moolenaar's opportunity to observe the entire incident and the actions and interactions of the perpetrators during the attack, and her testimony regarding the factual basis for her conclusions, her statement regarding who directed the attack was proper under Federal Rule of Evidence 701.

## E. Whether the appellant was afforded a public trial, where at least three members of the public were denied access to the trial.

Huggins claims his Sixth Amendment right to a public trial was violated where several individuals who would have provided support to him were denied access by Superior Court marshals. He submits an affidavit from one individual attesting to this exclusion and asserts that others had similar experiences, though no affidavits were submitted.

We acknowledge the well-settled law that public trials are constitutionally required to guard against the lack of confidence that closed trials inspire. *See e.g. Press-Enterprise Co. v. Superior Court of*

*California, Riverside County*, 464 U.S. 501, 507-511, 104 S. Ct. 819, 78 L. Ed. 2d 629 and n.10 (1984) (noting that, in some limited circumstances, closure or reasonable limitations on access to a trial may be warranted "in the interest of the fair administration of justice.") (citation omitted); *Levine v. United States*, 362 U.S. 610, 616, 80 S. Ct. 1038, 4 L. Ed. 2d 989 (1960) (noting that the right to a public trial "is a reflection of the notion, deeply rooted in the common law that 'justice must satisfy the appearance of justice.'") (quoting *Offutt v. United States*, 348 U.S. 11, 14, 75 S. Ct. 11, 13, 99 L. Ed. 11 (1954)). Nonetheless, in line with our limited role as an appellate tribunal, we cannot decide whether Huggins was denied a public trial in this instance, for it would require us to engage in factfinding and consideration of evidence not passed on below. *See* V.I.R. APP. P. 10(a) (outlining what constitutes record on appeal); *see also Felix*, 85 Fed. Appx. 288 (noting appellate court should not consider matters not in the trial record).

Significantly, we cannot determine from this record how many individuals were prevented from entering the courtroom, if any, and the reasons for their exclusion. Therefore, as the appellant appears to concede in his reply brief, he must reserve this challenge for a collateral proceeding.

## III. CONCLUSION

In view of the foregoing, this Court will decline to reach the appellant's challenges to his counsel's representation and the exclusion at trial of members of the public. We will affirm his conviction as to the remaining issues.