

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-27-2007

# Govt of VI v. Suarez

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4477

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Govt of VI v. Suarez" (2007). *2007 Decisions*. Paper 685.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/685

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 06-4477

_____

GOVERNMENT OF THE VIRGIN ISLANDS

v.

OMAR JAMIL SUAREZ
Appellant

_____

On Appeal From the District Court of the Virgin Islands
Division of St. Thomas and St. John
(D.C. Crim. Action No. 04-cr-00117)
District Judge:  Hon. Raymond L. Finch, Chief Judge
District Judge:  Hon. Curtis V. Gomez
Territorial Judge:  Hon. Patricia D. Steele

_____

Argued May 8, 2007

BEFORE:  SLOVITER, STAPLETON and
VAN ANTWERPEN, Circuit Judges

(Opinion Filed  July 27, 2007)

_____

Maureen Phelan
Dolace McLean (Argued)
Office of the Attorney General of the Virgin Islands
Department of Justice
34-38 Kronprindsens Gade
GERS Complex, 2nd Floor
Charlotte Amalie, St. Thomas
USVI  00802
 Attorneys for Appellee

Stephen A. Brusch (Argued)
The Brusch Law Firm
No. 40A Norre Gade
P.O. Box 988
Charlotte Amalie, St. Thomas
USVI  00804
  Attorney for Appellant

———————

OPINION OF THE COURT

———————

STAPLETON, Circuit Judge:

Omar Jamil Suarez appeals his convictions for aggravated rape in the first degree and rape in the first degree under Virgin Islands law.  For the reasons that follow, we will affirm Suarez's aggravated rape conviction.  We will, however, reverse his first-degree rape conviction and remand with instructions to enter a judgment of acquittal on that charge.

I.

We recount the evidence, as we must, in the light most favorable to the government.  On July 31, 2002, ten-year old A.B.[1] visited the home of Susie Bryan, her aunt, and Suarez, Bryan's long-time companion.  Bryan went to run some errands, leaving Suarez to supervise both A.B. and his four-year old daughter, S.S.  After Suarez and the

———————

[1]In the interest of privacy, we abbreviate the names of the children involved in this case.

two children returned home from a trip to the community swimming pool, he asked them whether they wanted to play a "tasting game." A.B. was unfamiliar with the game, but agreed to play.

Suarez led A.B. and S.S. into his bedroom and blindfolded each child with a sock and a shirt. He then repeatedly placed his finger into each of their mouths, flavored by a different food or condiment on each occasion, and asked them to identify the substance on his finger by taste. After A.B. had tasted several different items, which she identified as onion dip, barbeque sauce, cocoa powder, and "something like a Twinkie . . . call[ed] a banana twist," JA at 297, Suarez inserted "something big" into her mouth and told her "don't bite it." JA at 298. A.B. testified that the object was "round" and "didn't feel like a finger," and that it "started off a little small and got bigger . . . . it was kind of . . . soft and got harder." JA 298-99. A.B. also testified that she thought that the object might be Suarez's penis (she had previously seen both her father's and brother's penises in the shower), but admitted that she could not be certain since she was blindfolded.[2]

After A.B. told Suarez that the object did not have any taste, he suggested that this was because she "[ha]dn't suck[ed] further up." JA at 298-99. Suarez used his hand to "push" A.B.'s head "a little forward." JA at 298-99. The object touched A.B.'s throat and made her feel like she was going to vomit. She also felt "little hairs" against her face.

---

[2]A.B. deduced that the object was not a hot dog, *see* JA at 320 (a hot dog "wouldn't get bigger"), a Twinkie, *see id.* ("That's flat on the bottom and round on the top"), or a banana twist, *see id.* ("A banana twist is a bun with cream stuff in it.").

JA at 298. A.B. admitted that neither she nor Suarez said anything after he pushed her head forward. JA at 299-300. A.B. also admitted that Suarez did not touch her with his hands during the encounter other than when he pushed her head forward. JA at 299.

Meanwhile, S.S. began urging Suarez to switch roles with them. Suarez told S.S. to "let [him] finish up" with A.B., but S.S. continued to press him. JA at 302. Suarez then asked A.B. whether she "want[ed] to stop" and she responded yes. JA at 302. According to A.B., Suarez thereafter placed the object into her mouth two or three more times before finally stopping. Suarez waited a "couple of minutes" before removing A.B.'s blindfold, at which point she noticed "white stuff" on his shorts. JA at 303.

A.B. then joined S.S. in urging Suarez to take his turn playing the "testing game." Suarez agreed, and they continued to play the game for a brief period. When the game ended, A.B. and S.S. went into the living room and watched television while Suarez used the bathroom.

Later that day, Susie Bryan returned home and took A.B. to the home of her great-grandmother, Inga Bryan. Shortly after her arrival, A.B. approached Inga, scared and upset, and told her about the "tasting game" and how she believed that Suarez may have inserted his penis into her mouth.

Suarez was subsequently charged with one count of aggravated rape in the first degree under V.I. Code tit. 14, § 1700(a)(1), and one count of rape in the first degree under V.I. Code tit. 14, § 1701(2). The case was tried before a jury in the Superior Court

4

of the Virgin Islands (then known as the Territorial Court of the Virgin Islands). The jury convicted Suarez on both counts, and the Superior Court denied Suarez's post-trial motions. Suarez appealed to the Appellate Division of the District Court of the Virgin Islands ("Appellate Division"), which affirmed both convictions. This appeal followed.[3]

Suarez raises several arguments on appeal, challenging the effectiveness of his trial counsel on various grounds under the Sixth Amendment, certain evidentiary rulings by the Superior Court, and the sufficiency of the evidence supporting his convictions. Suarez also contends that the government suborned perjured testimony and destroyed potentially exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).[4]

II.

The Appellate Division correctly rejected the majority of Suarez's contentions, and there is little we can add to its thorough analysis in this respect. We agree with the

---

[3]We have jurisdiction under 48 U.S.C. § 1613a(c), and, because this case came to the Appellate Division "[p]rior to the establishment of the [Supreme Court of the Virgin Islands]," it had jurisdiction under 48 U.S.C. § 1613a(a). If such a case were appealed today from the Superior Court, it would proceed directly to the Supreme Court of the Virgin Islands for appellate review. *See* V.I. Code tit. 4, §32 (granting the Supreme Court of the Virgin Islands jurisdiction over appeals from the Superior Court).

[4]This court reviews decisions of the Superior Court using the same standard of review applied by the Appellate Division. *Tyler v. Armstrong*, 365 F.3d 204, 208 (3d Cir. 2004); *Gov't of the Virgin Islands v. Albert*, 241 F.3d 344, 347 n.3 (3d Cir. 2001); *Semper v. Santos*, 845 F.2d 1233, 1235-36 (3d Cir. 1988). We exercise plenary review over the Superior Court's legal determinations, but only review its findings of fact for clear error. *Gov't of the Virgin Islands v. Fahie*, 419 F.3d 249, 252 (3d Cir. 2005). The Superior Court's evidentiary rulings are reviewed for abuse of discretion. *Gov't of the Virgin Islands v. Riley*, 973 F.2d 224, 228 (3d Cir. 1992).

5

Appellate Division's denial of Suarez's ineffective assistance of counsel claims without prejudice to his right to raise those claims on collateral review.[5] "It has long been the practice of this court to defer the issue of ineffectiveness of trial counsel to a collateral attack," *United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003), and we perceive no basis for departing from this general rule here.

We likewise agree with the Appellate Division that the Superior Court acted well within its discretion in admitting Inga Bryan's testimony regarding A.B.'s out-of-court statements about the "tasting game," uttered approximately two hours after the incident, under the excited utterance exception to the hearsay rule. *See* V.I. Code tit. 5, § 932(4)(b) (recognizing hearsay exception for statements made "while the declarant was under the stress of a nervous excitement caused by such perception"); *accord* Fed. R. Evid. 803(2). While Suarez protests that the time lapse between the alleged rape and A.B.'s statements to Bryan gave her sufficient opportunity to reflect on the encounter and fabricate a story, thereby rendering the statements beyond the scope of the excited utterance exception, we think the Superior Court had an adequate basis to reach a contrary result considering the age of the declarant and the nature of the event about which she spoke. *See, e.g.*, *United States v. Hefferon*, 314 F.3d 211, 222-23 (5th Cir. 2002) (upheld admissibility of child

_____

[5]Suarez's ineffectiveness claims are based on trial counsel's failure to object to improper expert testimony by Dr. Melinda Astran; failure to call A.B.'s grandmother, Nancy Bryan, as a witness at trial; and failure to object to improper argument by the prosecutor regarding the refusal of Suarez and Susie Bryan to allow investigators to question S.S. about the incident.

victim's statements, made within two hours of sexual encounter, as excited utterances, noting that "when the victim declarant is a young child . . . the possibility of fabrication and coaching are limited and the likelihood that the trauma from the startling event will remain with the child for some time after the encounter is strong") (citations omitted).[6]

Like the Appellate Division, we also find no abuse of discretion in the Superior Court's decision to prohibit Suarez from presenting evidence, through the testimony of his sister-in-law, Lisa Jamil, that he had cared for young children on many occasions in the past without incident. Contrary to Suarez's assertion, this evidence does not constitute habit evidence for the reasons noted by the Appellate Division, nor can it be fairly characterized as admissible character evidence. *See Gov't of the Virgin Islands v. Grant*, 775 F.2d 508, 512 (3d Cir. 1985) (evidence proffered to show absence of prior misconduct by defendant is not admissible as character evidence, at least in cases where defendant's character is not essential element of the charged offense). To the extent that Suarez contends that the Superior Court's adverse ruling deprived him of his constitutional right to present a complete defense, we are unpersuaded. To establish a constitutional violation in these circumstances, a defendant must show: (1) he was

---

[6]Suarez also complains that admission of A.B.'s out-of-court statements to Bryan concerning the "tasting game" violated his Confrontation Clause rights. Based on our review of the record, it does not appear that Suarez raised this argument before the Superior Court, and the Appellate Division did not expressly address it on appeal. Even assuming that Suarez properly preserved his Confrontation Clause challenge, we conclude that it lacks merit. Consistent with his rights under the Confrontation Clause, Suarez had the opportunity to, and did, cross-examine A.B. about the challenged statements at trial.

deprived of the opportunity to present evidence in his favor; (2) the excluded evidence was material to the defense, i.e., there is a reasonable likelihood that consideration of the evidence would have affected the jury's judgment; and (3) the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose. *Gov't of the Virgin Islands v. Mills*, 956 F.2d 443, 446 (3d Cir. 1992). Suarez plainly cannot satisfy the latter two requirements here.

As the Appellate Division also concluded, there is sufficient evidence to support Suarez's aggravated rape conviction under § 1700(a)(1).[7] To meet its burden on the aggravated rape charge, the government was required to prove beyond a reasonable doubt that (1) Suarez engaged in an act of sexual intercourse or sodomy, which is defined to include fellatio,[8] with A.B.; (2) A.B. was not his spouse; and (3) A.B. was under the age of thirteen. Suarez only takes issue with the first element, arguing that the evidence is insufficient to establish beyond a reasonable doubt that he inserted his penis, as opposed to some other object, into A.B.'s mouth.

The evidence shows that the object, which Suarez expressly instructed A.B. not to bite, resembled a penis in shape and size. The object hardened and expanded in

---

[7]In reviewing a jury verdict for sufficiency of the evidence, "we determine whether there is substantial evidence that, when viewed in the light most favorable to the government, would allow a rational trier of fact to convict." *United States v. Helbling*, 209 F.3d 226, 238 (3d Cir. 2000) (quoting *Gov't of the Virgin Islands v. Charles*, 72 F.3d 401, 410 (3d Cir. 1995)).

[8]*See* V.I. Code tit. 14, § 1699(e).

8

dimension while in A.B.'s mouth. After Suarez pushed A.B.'s head farther forward on the object, she felt "little hairs" against her face. When Suarez finally removed A.B.'s blindfold, she noticed a white-colored substance on his shorts. Considering this evidence as a whole and in the light most favorable to the government, together with A.B.'s testimony that she herself thought that the object in her mouth might be Suarez's penis as opposed to his finger or some type of food substance, we agree with the Appellate Division that the jury could have drawn the reasonable inference that the object in A.B.'s mouth was, in fact, Suarez's penis.

## III.

Although the Appellate Division did not specifically address Suarez's perjury and *Brady* claims, these contentions need only detain us briefly. We first reject Suarez's argument that the government suborned perjury by permitting A.B. to testify that the object in her mouth started out soft and "got harder." Suarez relies exclusively on a post-trial affidavit submitted by Nancy Bryan, A.B.'s grandmother, who did not testify at trial, which states that A.B. told her on the night of the incident that the object Suarez placed in her mouth only felt soft. While Bryan's affidavit may suggest that A.B.'s trial testimony was not wholly consistent with her earlier accounts of the incident in question, it falls far short of establishing that A.B.'s testimony was perjurious, much less that the government knowingly made use of false testimony to obtain Suarez's conviction. *See Lambert v. Blackwell*, 387 F.3d 210, 249 (3d Cir. 2004) (noting that "[d]iscrepancy is not enough to

9

prove perjury"); *United States v. Payne*, 940 F.2d 286, 291 (8th Cir. 1991) (mere challenge to witness's testimony by another witness does not establish perjury).

We also conclude that Suarez's *Brady* claim lacks merit. Relying on the testimony of Randy Berry, A.B.'s father, that the police officer to whom he reported the incident "ripped up" the police report, JA at 426, Suarez contends that the government improperly deprived him of access to material and potentially exculpatory evidence in the form of the discarded police report. As Berry explained, however, the police officer "ripped up" the police report upon learning that the incident had occurred while A.B. was in the care of her mother, Berry's former wife, and simply "started filling out a new one with Ms. Berry [listed as] filing the report because the incident happened in her care." JA at 426.[9] There is no reason to believe that the substance of the discarded police report differed in any material way from the new report, which Suarez does not suggest was withheld from him by the government, or that the initial report otherwise contained exculpatory information.

IV.

We must still consider Suarez's contention that there is insufficient evidence to support his first-degree rape conviction. The Virgin Islands' first-degree rape statute provides that:

Whoever perpetrates an act of sexual intercourse or sodomy with a person-

(1) when through idiocy, imbecility or any unsoundness of mind,

---

[9]Ms. Berry had accompanied Mr. Berry to the police station. JA at 426.

either temporary or permanent, the person is incapable of giving consent, or, by reason of mental or physical weakness or immaturity or any bodily ailment, the person does not offer resistance;

(2) when the person's resistance is forcibly overcome;

(3) when the person's resistance is prevented by fear of immediate and great bodily harm which the person has reasonable cause to believe will be inflicted upon the person;

(4) when the person's resistance is prevented by stupor or weakness of mind produced by an intoxicating, narcotic or anaesthetic agent, or when the person is known by the defendant to be in such state of stupor or weakness of mind from any cause; or

(5) when the person is, at the time, unconscious of the nature of the act and this is known to the defendant-

is guilty of rape in the first degree . . . .

V.I. Code tit. 14, § 1701.

Count Two of the Information charged that Suarez committed first-degree rape under subsection (2) of the statute, and the government proceeded at trial solely under this subsection. To sustain its burden under § 1701(2), the government was required to prove beyond a reasonable doubt that: (1) Suarez perpetrated an act of sexual intercourse or sodomy with A.B.; (2) A.B. resisted; and (3) Suarez forcibly overcame her resistance. Suarez contends that the his rape conviction must be overturned because the government failed to prove that A.B. affirmatively resisted his illicit advances. We agree.

In reaching a contrary result, both the Superior Court and the Appellate Division relied in part on A.B.'s testimony that Suarez told her she needed to "suck further up" and

11

then pushed her head "a little forward." Suarez's actions were a direct response to A.B.'s comment that she did not taste anything on the object in her mouth, however, and there is no affirmative evidence in the record that A.B. offered any degree of resistance, physical or otherwise, when he pushed her head forward. In fact, A.B. admitted that she did not say anything to Suarez at that point in the encounter. The unfortunate reality is that A.B. in all likelihood did not resist Suarez's advances because she was under the misimpression that she would be able to taste and identify the object's flavor - the very objective of the "tasting game" - if she simply followed Suarez's instructions. While a perpetrator of sodomy who employs such deceptive tactics to avoid resistance by his victim might well be successfully prosecuted under another subsection of the Virgin Islands' first-degree rape statute, *see* § 1701(5) (criminalizing sodomy where the victim "is, at the time, unconscious of the nature of the act and this is known to the defendant"); *see also* §1701(1) (proscribing sodomy with person who "by reason of . . . immaturity . . . does not offer resistance"), the absence of resistance by the victim is fatal to a prosecution under § 1701(2), the only provision that concerns us here.[10]

In its resistance analysis, the Appellate Division also found it significant that Suarez "disregard[ed]" A.B.'s subsequent "pleas to stop." App. at F. We do not think this is a fair characterization of the evidence, however, even when viewed in the light

---

[10]We note that resistance by the victim is a *sine qua non* of § 1701(2) alone; none of the other four subsections of the statute contains a resistance requirement.

most favorable to the government. A.B. simply responded yes when asked by Suarez, in the face of repeated requests by S.S. that he take his turn playing the "tasting game," whether she wanted to stop. Suarez then placed his penis in A.B.'s mouth two or three more times without meeting any resistance. After Suarez removed her blindfold, A.B. promptly joined S.S. in urging him to take his turn at the game. Suarez and the two children switched roles and continued to play the game together without objection. Again, while the sad truth may be that A.B. did not resist Suarez's advances because she failed to fully comprehend the nature of his conduct, the jury was not permitted to convict Suarez under § 1701(2) without sufficient proof of resistance.[11]  Because we believe that the government failed to meet this burden here, we will reverse Suarez's first-degree rape conviction under § 1701(2).

V.

For the foregoing reasons, we will affirm Suarez's aggravated rape conviction without prejudice to his right to raise his ineffective assistance of counsel claims in a petition to the Superior Court pursuant to V.I. Code tit. 5, §§ 1301-1325. We will reverse

---

[11]The Appellate Division also supported its analysis by emphasizing that a child victim of sexual abuse need not exert that the same level of resistance that would be expected of an adult victim. While we agree with the Appellate Division that the resistance inquiry is highly context-specific and should include consideration of the victim's age and maturity, the fact remains that the record evidence here fails to demonstrate that A.B. offered any resistance to Suarez's conduct. To the extent that the Appellate Division relied on cases from other jurisdictions upholding rape convictions where the child victim did not affirmatively resist the encounter, those cases involved either inapposite factual scenarios or prosecutions under statutes without resistance requirements.

his first-degree rape conviction and remand with instructions to enter a judgment of acquittal on that charge.