**ROGER EDWARDS, Appellant**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

D.C. Crim. App. No 2001/247

District Court of the Virgin Islands

Division of St. Thomas and St. John

August 29, 2006

Leslie L. Payton, Esq., St. Thomas, U.S.V.I., *For the Appellant.*

Douglas Juergens, A.A.G., St. Thomas, U.S.V.I., *For the Appellee.*

Finch, *Chief Judge, District Court of the Virgin Islands*; Gomez, *Judge of the District Court of the Virgin Islands*; and Cabret, *Presiding Judge of the Superior Court of the Virgin Islands, Sitting by Designation.*[1]

## MEMORANDUM OPINION

(August 29, 2006)

Roger Edwards appeals his conviction in the Superior Court of the Virgin Islands for unlawful sexual and aggravated rape of his daughter, M.E. For the reasons set forth below, we will affirm.

---

[1]    While Judge Cabret participated in the panel discussion, she did not participate in the decision after her retirement.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 1, 2000, Officer Celeste Christopher of the Virgin Islands Police Department interviewed M.E., a ten year old minor who was brought to the police station to report a rape. M.E. stated that over the course of five years, her father, Roger Edwards, had raped and molested her. Specifically, M.E. stated that when she was five years old, she and her aunt, Sylvie Edwards, came to St. Thomas from St. Lucia to live with her father for eight months. M.E. reported that during that time, Edwards sexually molested her. M.E. also stated that Edwards called her to watch sex videos and performed acts that she saw on the videos on her.

After M.E. returned to St. Lucia, her father visited her for two weeks. The night before Edwards returned to St. Thomas, he asked M.E. to sleep with him, but she sat upright on the bed and left the room when Edwards fell asleep. M.E. also reported that she returned to St. Thomas to live with her father for another eight months when she was seven years old. During that period, her father again sexually molested her. M.E. stated that on three different occasions, Edwards made her put her mouth on his penis and made her hold his penis in her hand and move her hand up and down his penis. M.E. also stated that on one occasion Edwards tried to insert her penis inside her vagina but that it was too painful and she made him stop.

In April, 2000, M.E. once again moved in with Edwards. M.E. stated that at that time, Edwards called her to his room to rub his back. M.E. alleged that her father kissed her on the lips, took off her pants and underwear, and started to lick her vagina with his tongue.

M.E. further reported that for several years she told three adult females—Sheila Tatem, Deborah Nibbs, and her mother, Julia Thomas— about her father's sexual abuse, but they did nothing.

Edwards was subsequently charged with an eleven count Information with violations of Title 14 section 1708(2) of the Virgin Islands Code (unlawful sexual contact with a minor in the first degree), Title 14 section 1700(a)(1) of the Virgin Islands Code (aggravated rape), and Title 14 section 332 of the Virgin Islands Code (attempted aggravated rape). During a two day trial, M.E. testified to all of the foregoing. Two defense witnesses—Sheila Tatem and Deborah Nibbs—invoked their Fifth Amendment right against self-incrimination. Following the trial, Edwards claims that M.E. "apologized for what she did and that she

471

missed her father [Edwards] and that she loves him." Appellant's Br. 16. On May 11, 2001, Edwards was found guilty of aggravated rape and three counts of unlawful sexual contact in the first degree.

On May 21, 2001, Appellant filed a motion for a new trial pursuant to Rule 135 of the Territorial Court Rules of Criminal Procedure. On June 29, 2001, the trial court issued a written order denying Edwards' motion for a new trial and sentenced him to twenty years in jail.[2]

On appeal Edwards asserts that the trial court committed the following reversible errors:

1.  The trial court erred in failing to grant a new trial on the basis of newly discovered evidence.

2.  The trial court erred in failing to grant a new trial on the grounds that a prosecution witness violated the court's sequestration order.

3.  The trial court erred in failing to grant a new trial on the basis that a juror failed to disclose that a member of her family was raped.

4.  The trial court denied Edwards a fair trial by failing to grant immunity to Sheila Tatem and Deborah Nibbs.

5.  The trial court erred in failing to curtail improper comments by the prosecution during closing argument.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to review final judgments and orders of the Superior Court. See The Omnibus Justice Act of 2005, Act No. 6730, § 54 (amending Act No. 6687 (2004) which repealed 4 V.I.C. §§ 33-40, and reinstating appellate jurisdiction in this Court);[3] Revised Organic Act of 1954 § 23A; 48 U.S.C. § 1613a.[4] Evidentiary decisions by the Superior Court are reviewed for abuse of discretion. *Gov't of the V.I. v. Pinney*, 967 F.2d 912, 914, 27 V.I. 412 (3d Cir. 1992). We review the Superior Court's findings of fact for clear error and afford plenary

---

[2]  Edwards subsequently filed a second motion for a new trial pursuant to Rule 33(b)(1) of the Federal Rules of Criminal Procedure. That motion is not before this Court and will not be addressed herein.

[3]  Our jurisdiction in this regard was previously provided under 4 V.I.C. § 33.

[4]  The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2000), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

review to determinations of law. *Huggins v. Gov't of the V.I.*, 2005 U.S. Dist. LEXIS 34501, at *6, 47 V.I. 619 (D.V.I. App. Div. Dec. 9, 2005).

## III. ANALYSIS

### A. Newly Discovered Evidence

Edwards asserts that the Superior Court erroneously denied his post-conviction motion for a new trial. Edwards' motion was based on his claim that M.E. recanted her incriminating testimony when she told Edwards that she was sorry.

█ To determine if there is newly discovered evidence justifying a new trial, the trial judge must find that the defendant has satisfied a five-part test:

> (1) The motion must allege facts from which the court may infer diligence on the part of the movant; (2) the evidence must indeed be newly discovered, meaning discovered since the trial; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material to the issues involved; and (5) the evidence must be of such probative value, and of such nature, that it would probably produce an acquittal if presented at a new trial.

*Gov't of the V.I. v. Sampson*, 94 F. Supp. 2d 639, 650-51, 42 V.I. 247 (D.V.I. App. Div. 2000).[5] All five prongs must be satisfied for the appellant to receive a new trial. *Sampson*, 94 F. Supp. 2d at 651. This Court reviews the refusal to grant a new trial for abuse of discretion. *Id.* at 650.

█ "The primary issue in this appeal is the fifth element of the new trial test—whether the recanted testimony as newly discovered evidence 'would probably produce an acquittal' at a new trial." *United States v. Provost*, 969 F.2d 617, 620 (8th Cir. 1992). The question of whether the recanted testimony "would probably produce an acquittal" rests on the credibility of the recantation. *Id.* Accordingly, the trial court must make a threshold determination of whether the challenged testimony is false. *Id.* ("[I]f the court concludes that the recantation is not credible and does not affect the credibility of the original testimony, then it probably would not produce an acquittal on retrial."); *see also United States v. Rouse*, 410

---

[5] *See also United States v. DiSalvo*, 34 F.3d 1204, 1215 (3d Cir. 1994); *Gov't of the V.I. v. Lima*, 774 F.2d 1245, 1250 (3d Cir. 1985).

F.3d 1005, 1009 (8th Cir. 2005) ("When the claim of newly discovered evidence is based on a recantation, the district court must first determine whether the recantation is credible."); *United States v. Pearson*, 203 F.3d 1243, 1274 (10th Cir. 2000) (noting that where "the new evidence is a recantation of trial testimony, the trial court must first be satisfied that the challenged testimony was actually false" (citations omitted)).

In general, "[c]ourts look upon recantations with suspicion." *United States v. Miner*, 131 F.3d 1271, 1273 (8th Cir. 1997); *see also United States v. Ramsey*, 726 F.2d 601, 605 (10th Cir. 1984). Such skepticism about recantation "is especially applicable in cases of child abuse where recantation is a recurring phenomenon such as when family members are involved and the child has feelings of guilt or family members seek to influence the child to change her story.'" *Miner*, 131 F.3d at 1273 (citations omitted).

In the case at bar, Edwards claims that M.E. approached him outside the courtroom during jury deliberation and apologized for what she did. At the hearing on Edwards' motion for a new trial, appellant's counsel declined the trial court's invitation to conduct an evidentiary hearing and to introduce any testimony. Based on the evidence presented, the trial court concluded that the statement did not constitute a recantation and denied appellant's motion for a new trial.

After reviewing the record, we find that Edwards presented no evidence that M.E.'s trial testimony was fabricated. Mere statements of apology or affection from a victim does not point to the falsity of her trial testimony. *Cf. United States v. MMR Corp.*, 1991 U.S. Dist. LEXIS 1754, at *20 (E.D. La. Feb. 11, 1991) (finding no recantation where statement was not inconsistent with trial testimony); *United States v. Ford*, 1991 U.S. App. LEXIS 10642, at *4-*5 (10th Cir. Apr. 16, 1991) (unpublished table decision) ("Mr. Haywood's affidavits do not constitute a recantation of his testimony because the statement in the affidavits did not point to the falsity of testimony leading to Mr. Ford's conviction."). Accordingly, we find that trial court did not abuse its discretion in refusing to grant a new trial.

## B. Sequestration Order

Edwards next claims that a prosecution rebuttal witness violated the Superior Court's sequestration order. He asserts that the Superior Court erred when it denied his motion for a new trial on those grounds.

■ "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses."[6] Sequestration is intended to prevent the possibility of witnesses shaping their testimony to match other witnesses. *Gov't of the V.I. v. Edinborough*, 625 F.2d 472, 17 V.I. 623 (3d Cir. 1980). The rule does not explicitly address the situation in which a witness fails to comply with a sequestration order, and courts have considerable discretion to tailor an appropriate remedy. *Pickel v. United States*, 746 F.2d 176, 182 (3d Cir. 1984) (noting that a violation of a sequestration order "might support dismissal in a most egregious situation").

■ In order for a court to invoke the extreme remedy of declaring a new trial, the violation must have actually prejudiced the defendant. *Pickel*, 746 F.2d at 182; *see also Edinborough*, 625 F.2d at 474 (holding that failure of a court to sequester a witness is not reversible error absent a showing of prejudice).

The trial judge ordered all witnesses who were to give testimony to exit the court on the first day of the trial. When defense counsel observed Ariana Watley sitting in the court, she was not on a witness list. As the case progressed, Ariana Wattley was called by the government as a rebuttal witness to refute testimony offered by Edwards on cross examination. Defense counsel objected, citing her failure to comply with the sequestration order. The trial court overruled the objection and Ariana Wattley was permitted to testify. The court explained its decision during Edwards' motion for a new trial stating, "I personally observed the witness in the court. ... She left and she was not present during the testimony of this defendant and therefore I have ruled that she was allowed to testify." [J.A. I at 167.]

■ The trial court's ruling correctly reflects that the sequestration order was not violated. The trial court ordered all witnesses who were to give testimony to leave the court. At that time, Wattley was not on the witness list and was not required to leave the court. *Cf. Gregory v. Saks & Co.*, 1986 U.S. Dist. LEXIS 19940, at *10 (E.D. Pa. Sept. 29, 1986) (finding no violation of a sequestration order where order did not state that witnesses could not speak to one another outside the courtroom).

---

[6] FED R. EVID. 615; *see also* Rule 615 of the Uniform Rules of Evidence, as codified by the Virgin Islands Legislature in 5 V.I.C. section 738. Both FED. R. EVID. 615 and UNIFORM R. EVID. 615 are essentially identical.

Moreover, the record reveals that Wattley was not present during appellant's testimony. Therefore, Edwards cannot show prejudice from Wattley's alleged violation of the sequestration order. *Cf. Burks v. Oklahoma Publ. Co.*, 81 F.3d 975, 981 (10th Cir. 1996) (finding abuse of discretion when trial court disqualified rebuttal witness from testifying even though she did not hear any testimony related to her testimony). Accordingly, the trial court properly exercised its discretion to deny the motion for a new trial.

## C. Juror Bias

Edwards' motion for a new trial also alleged that a juror, V.P., misled the court by failing to disclose that a member of her family was raped. As evidence, Edwards provided information that juror V.P.—during a *voir dire* in another case—did disclose such information.

In *McDonough Power Equipment Incorporated v. Greenwood,* 464 U.S. 548, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984), the Supreme Court held that in order to obtain a new trial based on a false answer during *voir dire,* "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause." *Id.* at 556.

In the instant case, the trial court noted that juror V.P.—in a sidebar discussion with the court during jury selection—did disclose that a member of her family had been raped. Based on this evidence, the Court found that the appellant had not met his burden of showing that a juror failed to honestly answer a question on *voir dire.*

The trial record clearly shows that juror V.P. disclosed that a member of her family had been raped. As such, the trial court properly exercised its discretion to deny the motion for a new trial.

## D. The Immunity Offer

During the course of the trial, Edwards sought the testimony of Sheila Tatem and Deborah Nibbs, asserting that the victim had related certain exculpatory facts to these witnesses. The trial court judge declined the invitation to grant immunity to either of these witnesses. M.E. testified that she told both women that her father had been laying on top of her and that neither of them called or reported the incident to the police. The victim was questioned extensively as to why she did not tell Deborah

476

Nibbs or Sheila Tatem that the appellant had done other sexual acts. When asked, the victim testified she did not feel comfortable talking to them about those acts. The trial court found that "the testimony of Ms. Nibbs and Ms. Tatem on this issue was therefore only cumulative, as they would have testified that when they questioned the victim she only indicated her father lay upon her." [J.A. II at 40.] The trial judge further stated that "the testimony that [the appellant] sought to bring before the jury proved unnecessary as the jury returned a verdict of not guilty on all counts that involved the time-frame when [the appellant] and his daughter, M.E., were in some type of relationship with those witnesses." [*Id.* at 43.]

██ Under limited circumstances, trial court judges have the power to grant immunity to witnesses who otherwise would refuse to testify. The United States Court of Appeals for the Third Circuit has prescribed a five-factor analysis when assessing whether it is proper to grant judicial immunity to witnesses who otherwise refuse to testify. The five factors are:

1. The immunity is properly sought in the [trial court];
2. the witness is available to testify;
3. the proffered testimony is clearly exculpatory;
4. the proffered testimony is essential to the defense; and
5. there is no strong government interest against the immunity.

*United States v. Perez*, 280 F.3d 318, 348 (3d Cir. 2002).

This Court reviews the refusal to grant immunity for abuse of discretion. *United States v. Herman*, 589 F.2d 1191, 1213-14 (3d Cir. 1978). The trial court's findings regarding the likely effect of undisclosed information are reviewed for clear error. *United States v. Pelullo*, 173 F.3d 131, 135 (3d Cir. 1999).

██ In light of the evidence, the trial judge did not abuse his discretion in refusing to grant immunity to these witnesses. *See United States v. Steele*, 685 F.2d 793, 808 (3d Cir. 1982) (holding that judicial immunity was properly denied where proposed immunized testimony would not have been "clearly exculpatory"); *United States v. Lowell*, 649 F.2d 950, 965 (3d Cir. 1981) (same). Not only did the trial court find that the proffered evidence was not "clearly exculpatory," it determined the evidence to be cumulative. Moreover, the appellant cannot show that the testimony was "essential to the defense" as the jury returned a verdict of

not guilty on all counts that involved the time-frame when the appellant and his daughter had a relationship with the witnesses in question.

Accordingly, the Court will uphold the trial court's decision to deny a new trial based on the refusal of the trial court or the prosecution to grant immunity to Deborah Nibbs and Sheila Tatem.

### E. The Prosecutor's Closing Argument

Edwards next contends that the trial court erred in allowing the prosecutor to argue in closing argument that Edwards used M.E. as his "sex toy" and "sex slave."

■ A prosecutor's comments during closing argument warrant a mistrial only if: (1) the remarks were improper; and (2) the remarks prejudiced the appellant's substantive rights. *See United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d Cir. 1995). In deciding whether a comment is improper, the Court should look to the overall context of the statements in the trial record. *See United States v. Young*, 470 U.S. 1, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985).

■ Considering the facts of the case, the prosecutor characterization that M.E. was Edwards' "sex slave" or a "sex toy" was not improper because: (1) the prosecutor's statements were related to the charges in the Information; and (2) was supported by M.E.'s testimony at trial. *United States v. Retos*, 25 F.3d 1220, 1226 (3d Cir. 1994) (holding that a prosecutor's reference in opening argument to the defendant's "crooked law practice" was not improper because the statement "clearly related to the tax-evasion offenses charged in the indictment" and was supported by evidence of defendant's "shady professional practices"); *see also United States v. Helbling*, 209 F.3d 226, 242 (3d Cir. 2000) (government's description of the defendant as a "thief," a "looter," and as "unscrupulous" was not error where the characterizations were "related to the charges in the indictment which the evidence presented later did in fact establish"). Accordingly, we find that the prosecutor's statements do not rise to the level sufficient to grant the appellant a new trial.

## IV. CONCLUSION

For the foregoing reasons, the Court will affirm the judgment of the Superior Court.