

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-11-2007

# Edwards v. Govt of VI

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4139

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Edwards v. Govt of VI" (2007). *2007 Decisions.* Paper 1111.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1111

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
_____

No. 06-4139
_____

GOVERNMENT OF THE VIRGIN ISLANDS

v.

ROGER EDWARDS,
Appellant

_____

On Appeal from the District Court
of the Virgin Islands, Division of St. Thomas Appellate Division
(D.C. No. 01-cr-00247)
Appellate Judges: Hon. Raymond L. Finch, Chief Judge, District Court of the V.I.,
Hon. Curtis V. Gomez, Judge of the District Court of the V.I.,
and Hon. Maria M. Cabret, Judge of the Superior Court of the V.I.

_____

Argued May 7, 2007

Before: SLOVITER, STAPLETON, and VAN ANTWERPEN, Circuit Judges

(Filed    May 11, 2007 )
_____

Leslie L. Payton   (Argued)
Charlotte Amalie, St. Thomas
USVI 00803

        Attorney for Appellant

Matthew C. Phelan   (Argued)
Office of Attorney General of Virgin Islands
Department of Justice
Charlotte Amalie, St. Thomas
USVI 00802

        Attorney for Appellee

———

OPINION

———

SLOVITER, Circuit Judge.

A Virgin Islands jury convicted appellant Roger Edwards of four counts of sexual abuse of his minor daughter. Edwards filed a motion for a new trial which was denied by the Territorial Court of the Virgin Islands.[1] The Appellate Division affirmed, and Edwards appeals to this court.

## I.

As we write primarily for the parties who are familiar with the facts of this case, we will not restate those facts except as necessary for our analysis. Edwards was charged in an eleven-count information under the Virgin Islands Code with committing a variety of sexual acts against his minor daughter, M.E. M.E., who alternated between living with her aunt in St. Lucia and her father and an aunt in St. Thomas, testified that, during periods when she lived with her father between the ages of seven and ten years old, he subjected her to unlawful sexual conduct. The information contained counts charging each such occasion, but the jury, following a two-day trial, convicted Edwards on four counts, each involving an act of unlawful sexual contact that occurred between August 1, 1997 and December 31, 1997 when M.E. was seven and eight years old. The information

---

[1] That court is now known as the Superior Court of the Virgin Islands. See V.I. Code Ann. tit. 4, § 2.

charged violations of V.I. Code Ann. tit. 14, § 1708(2), which makes it a crime to have sexual contact with a person under the age of thirteen.[2]

Edwards moved for a new trial under Rule 135 of the Rules of the Territorial Court which that court denied in an opinion and order dated June 29, 2001. The Appellate Division of the District Court of the Virgin Islands affirmed in an August 29, 2006 opinion and order,[3] and Edwards now appeals to this court.

II.

The Appellate Division had jurisdiction pursuant to 48 U.S.C. § 1613a(a). This court has jurisdiction under 28 U.S.C. § 1291 and 48 U.S.C. § 1613a(c). See Gov't of the V.I. v. Hodge, 359 F.3d 312, 318-19 (3d Cir. 2004). In reviewing the decision of the Territorial Court, we apply the same standard of review as that used by the Appellate

---

[2] Specifically, in Count III, Edwards was charged with having his daughter rub his penis with her hand; in Count IV, with putting his mouth on her vagina; in Count V, putting his penis in her mouth; and, in Count VII, with touching her breast. M.E. testified to each of these acts at trial.

[3] We note that the Appellate Division appears to have used, as the source of facts in its decision, a statement by a police officer who interviewed M.E., rather than M.E.'s trial testimony. Edwards v. Gov't of the V.I., No. 2001/247, 2006 WL 2709634, at *1 (D.V.I. Aug. 29, 2006). It is unclear why trial testimony from the record was not used, particularly when the Appellate Division's discussion of the facts does not perfectly correspond with M.E.'s trial testimony, and includes alleged events that occurred when M.E. was five years old – events that she did not testify to at trial, and that were uncharged in the Information. As we do not rely on those facts, it is irrelevant for our purposes.

Division, exercising plenary review over issues of law and reviewing findings of fact for clear error. BA Properties Inc. v. Gov't of the V.I., 299 F.3d 207, 210 (3d Cir. 2002); Gov't of the V.I. v. Albert, 241 F.3d 344, 347 n.3 (3d Cir. 2001); Gov't of the V.I. v. Smith, 949 F.2d 677, 680 (3d Cir. 1991); Semper v. Santos, 845 F.2d 1233, 1235-36 (3d Cir. 1988). "A motion for a new trial is addressed to the trial judge's discretion, and the scope of appellate review is whether such discretion was abused." Gov't of the V.I. v. Lima, 774 F.2d 1245, 1250 (3d Cir. 1985).[4]

III.

Alleged Juror Bias

Edwards notes that a juror, Veronica Powell, did not respond in the affirmative during voir dire to the question of whether any family member had ever been the victim of sexual assault. He argues that because Powell answered this question in the affirmative in open court when asked during voir dire in another case the following

---

[4]As an initial matter, we note a troubling lack of coherent citations to the record on this appeal. See Fed. R. App. P. 28(a)(9)(A) ("[A]rgument . . . must contain[ ] appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies [.]"); Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (noting importance of proper appendix citation for appellate review). Indeed, Edwards' counsel has presented certain arguments that appear to be openly contradicted by parts of the record that have either gone uncited or do not appear in the appendix prepared for this appeal. This lack of clear citation and careful appendix preparation has thus unnecessarily complicated our review of Edwards' claims of error.

4

month, this shows that Powell was "biased and vindictive." Appellant's Br. at 14. We have previously stated that "[t]o order a new trial[,] because of a juror's failure to disclose information at voir dire, requires the complaining party to show that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for challenge for cause." United States v. Richards, 241 F.3d 335, 344 (3d Cir. 2001) (internal quotation marks and citation omitted). This rule is inapplicable here. As the Appellate Division observed, 2006 WL 2709634, at *4, the Territorial Court made clear in its ruling that "V.P. did disclose such information" at a sidebar during which counsel for Edwards was present, "in more detail during voir dire for this matter than the subsequent matter." Our review of the transcript of the jury selection on April 30, 2001 confirmed this assertion. Appellant has therefore not demonstrated that V.P. "failed to answer honestly a material question on voir dire" and, thus, the bias argument fails. See Richards, 241 F.3d at 344 (no abuse of discretion in trial court's failure to order new trial based upon juror's failure to disclose information, where it had "reviewed the transcript of the voir dire of the juror in question and determined that the juror did not withhold any information").

IV.

Alleged Victim Recantation

Second, Edwards argues that the trial court erred in failing to grant a new trial on the basis of witness recantation. He asserts that, while the jury was deliberating, M.E.

5

"recanted" her trial testimony by approaching Edwards, his mother, and his stepmother in the hallway of the court, apologizing, and offering that she still loves and missed Edwards. According to the Territorial Court, this matter was "immediately" brought to the attention of the Territorial Court, which directed the prosecution to "to get in touch with the victim" for purposes of examining the alleged recantation. App. at II.37.[5]

A trial court "may grant a new trial on the basis of 'newly discovered evidence' if five requirements are met: (a) the evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal." United States v. Cimera, 459 F.3d 452, 458 (3d Cir. 2006) (interpreting Rule 33 of the Federal Rules of Criminal Procedure) (internal quotation marks and citation omitted). "Although the decision to grant or deny a motion for a new trial lies within the discretion of the district court, the movant has a 'heavy burden' of proving each of these requirements." Id. (internal citation omitted).

Here, the record clearly shows that, at the June 21, 2001 hearing on Edwards'

_____

[5]According to the trial court's written decision, this discussion with the Court was conducted "on the record," App. at II.37, although the parties do not appear to have placed this discussion in the appendix before us.

6

motion for a new trial, the prosecutor proffered that the witness denied recanting any of her testimony and merely told her father she forgave him and still loves him. In his brief, Edwards argues that M.E. admitted to a woman named Hillis Walters that she "perjured herself." In support of this argument, Edwards refers to a discussion at the hearing on his motion for a new trial where his counsel told the court that Walters, a friend of appellant, "would testify . . . that [M.E.] told her that [her father's sexual abuse of her] was a complete lie." App. at I.151. A review of the record shows that the trial court ruled that counsel's proffer regarding Walters related to a recantation alleged to have occurred before trial and that the alleged new evidence had been available to Edwards at the time of trial. Edwards did not proffer any evidence to counteract the trial court's ruling nor did he offer to provide any other evidence of a recantation. The Appellate Division concluded that "Edwards presented no evidence that M.E.'s trial testimony was fabricated." 2006 WL 2709634, at *3. There is no basis for a new trial on this ground.

V.

Sequestration of Rebuttal Witness

Third, Edwards objects to testimony by a prosecution rebuttal witness, Ariana Watley,[6] who testified following Edwards' testimony in his own case. He asserts that Watley was present in the courtroom during his testimony, that Watley was biased against

---

[6]Alternate spellings, including "Whattley" and "Wattley," appear in the briefing, record, and rulings below.

7

Edwards because she had a paternity action pending against him, and that her presence violated a sequestration order by the trial judge. The decision of whether or not to sequester witnesses under Federal Rule of Evidence 615[7] is within the sound discretion of the district court, and a reversal on appeal will be made only upon a showing of an abuse of that discretion. See United States v. Agnes, 753 F.2d 293, 306 (3d Cir. 1985), abrogated on other grounds by Smith v. Borough of Wilkinsburg, 147 F.3d 272 (3d Cir. 1998); Gov't of the V.I. v. Edinborough, 625 F.2d 472, 474 (3d Cir. 1980) ("[T]he failure to sequester witnesses is not, in itself, grounds for reversal unless defendant can show prejudice resulting from the failure to sequester."). Here, the trial court apparently considered striking Watley's testimony upon the defense's objection,[8] but concluded that, as it had "personally observed this witness . . . and she was not present during [Edwards' testimony,]" App. at I.167, there was no basis for doing so. The court observed that Watley was present only during the testimony of Dr. Lloyd, the treating physician, and his testimony was unrelated to Watley's, as the Appellate Division noted, 2006 WL 2709634, at *4. Thus, Edwards has not even demonstrated that Watley was present during his testimony, let alone that any prejudice flowed from her presence. We see no abuse of discretion here.

[7]As the Appellate Division noted, V.I. Code Ann. tit. 5, § 738 is similar to the Federal Rule of Evidence on this point.

[8]The parties have not placed the transcript of this initial objection and ruling, referenced in the trial court's decision, in the appendix.

VI.

Use Immunity

Fourth, Edwards argues that the government and the Court violated his due process rights by refusing to grant immunity to two defense witnesses, his girlfriend Deborah Nibbs and friend Sheila Tatum,[9] both of whom invoked the Fifth Amendment at trial. According to the affidavit of an investigating officer, M.E. stated that she had told Nibbs, Tatum, and M.E.'s mother that her father was sexually abusing her, but that none of the women took any action. Edwards appears to argue that, because Nibbs and Tatum were potentially criminally liable for failing to report the abuse,[10] they were obliged to invoke the Fifth Amendment at trial. Thus, Edwards continues, the failure to grant immunity adversely affected his defense, as he presumes they would have testified that "when the victim told them of the alleged molestation by the Defendant, the victim later said the molestation was a lie and that she made up the story."[11] Appellant's Br. at 22.

---

[9]Alternate spellings of these names appear in the record and briefing.

[10]V.I. Code Ann. tit. 5, § 2533 mandates that certain professionals, such as those in the medical, child care, educational, and law enforcement communities, immediately report suspected child abuse. Apparently, Nibbs worked as a school aide and Tatum worked for the Human Services Department.

[11] Edwards has placed some of the pages from the colloquy on the Nibbs/Tatum testimony before the trial court in the Appendix. Nowhere is it proffered that Nibbs and Tatum would have testified that M.E. eventually told them she had lied about the abuse, although appellant's counsel appears to have read a

9

"Use immunity prevents the prosecution from directly utilizing immunized testimony" against a witness. United States. v. Smith, 452 F.3d 323, 336 (4th Cir. 2006). We review a trial court's refusal to immunize a possible defense witness for abuse of discretion. United States v. Herman, 589 F.2d 1191, 1213-14 (3d Cir. 1978); see also Gov't of the V.I. v. Smith, 615 F.2d 964 (3d Cir. 1980). Ordinarily, "the decision to grant immunity is reserved to the discretion of the executive branch." United States v. Adams, 759 F.2d 1099, 1107-08 (3d Cir. 1985). However, "under certain circumstances due process may require that the government afford use immunity for a defense witness." Smith, 615 F.2d at 968. Where the government has denied immunity as an act of "deliberate misconduct," made "with the deliberate intention of distorting the judicial factfinding process," the court may require that the government grant such use immunity. Id. at 969. Even absent this type of prosecutorial misconduct, a court has inherent power to grant use immunity "when it is found that a potential defense witness can offer testimony which is clearly exculpatory and essential to the defense case and when the government has no strong interest in withholding use immunity[.]" Id. at 972, 974 (noting "that opportunities for judicial use of this immunity power must be clearly limited"); see also United States v. Santtini, 963 F.2d 585, 598 n.6 (3d Cir. 1992) (noting the limited application of judicial immunity theory, and observing that "other courts of

statement from Nibbs to that effect at the June argument on the Rule 135 motion for a new trial.

10

appeals to consider the possibility of a court's inherent authority to immunize a witness have flatly rejected" such a result).

Here, Edwards has not demonstrated that any such circumstances warranting such immunization are present. There has been no showing that there was any effort by the government to distort the factfinding process, or even that the government has suggested it intended to prosecute either or both of the prospective witnesses. Edwards argues that the government threatened to prosecute the witnesses, thereby forcing them to rely on the Fifth Amendment. At oral argument, it became clear that Edwards relies only on the government's failure to agree to provide the witnesses with use immunity. The government had the right to decline use immunity; that does not constitute a threat of prosecution.

Moreover, there has been no proffer as to the "essential" and "exculpatory" nature of Nibbs's and Tatum's potential testimony.[12] Indeed, the trial court offered to allow defense counsel to introduce statements the two had made to officers, but Edwards' counsel objected on hearsay grounds, and the trial court noted in its ruling that it is likely that the two would not have testified to any exculpatory fact but to the fact that M.E. told

---

[12] To the extent appellant relies on the apparent exculpatory statement from Nibbs that M.E. confessed she had lied to her when she reported the abuse to Nibbs – first raised, it appears, at the June 2001 hearing on the Rule 135 motion – as grounds for a new trial, such an argument would fail; this statement should have been available to the defense prior to trial, and is, in any event, merely impeaching.

11

them her father had "lay upon her." App. at II.40. There is therefore no reason to disturb the trial court's ruling on the immunity point.[13]

VII.

Closing Remarks

Fifth, Edwards argues that statements made in the prosecutor's closing argument that referred to Edwards as a liar who used the victim as a "sex toy" and "sex slave" warrant a new trial. He did not object at the time these statements were made. "[A]n absence of any objection to the remarks at the time of their utterance weigh heavily in the determination that they are not actually prejudicial." United States v. Lawson, 337 F.2d 800, 807 n.4 (3d Cir. 1964).

---

[13] The Appellate Division noted that "the appellant cannot show that the testimony was 'essential to the defense' as the jury returned a verdict of not guilty on all counts that involved the time-frame when the appellant and his daughter had a relationship with the witnesses in question[.]" 2006 WL 2709634, at *5. It is true M E. testified that she told Tatum and Nibbs about the abuse during the year she was in Ms. Reed's class, 1998-1999, while Edwards was convicted of acts he committed a year earlier, between August and December 1997. However, this of course does not necessarily indicate that Nibbs and Tatum's unimmunized testimony would have been irrelevant to the question of Edwards' guilt on the 1997 charges; M.E. testified she told the women of the fact her father "was laying on" her without limiting the abuse to exclude that in 1997. Nevertheless, as observed above, relevancy is not the standard by which judicial immunity rulings are assessed.

12

"[N]on-contemporaneous objections" to prosecutorial remarks "are subject to plain error review. In order to demonstrate prosecutorial misconduct under a plain error standard, the review must reveal egregious error or a manifest miscarriage of justice." United States v. Brennan, 326 F.3d 176, 182 (3d Cir. 2003) (internal quotation marks and citations omitted). Plain error is that which is "clear" and "affect[s the] defendant's 'substantial rights.'" United States v. Nappi, 243 F.3d 758, 762 (3d Cir. 2001). "The prejudice, which may inure to a defendant as a result of allegedly improper comments made during the government's closing argument, must be evaluated in light of that closing argument as a whole." Gov't of the V.I. v. Joseph, 770 F.2d 343, 350 (3d Cir. 1985).

After reviewing the prosecutor's comments in the context of the entire summation and the proceedings as a whole, we find no error, plain or otherwise. The prosecutor's remarks were not an inappropriate characterization of the evidence before the jury.

VIII.

The May 7, 2004 Motion

Finally, Edwards asks this Court to direct the Superior Court to respond to his post-trial motion of May 7, 2004 made under Federal Rule of Criminal Procedure 33(b)(1), which the Appellate Division noted was not before it. 2006 WL 2709634, at *1 n.2. Edwards contends in that motion that newly-discovered evidence – including psychological counseling notes by Dr. Richard A. Gardner that suggested that M.E. made a false accusation of sexual abuse against another individual in a separate criminal action

13

– warrant a new trial. Edwards' counsel has included in the appendix here a copy of a letter dated November 16, 2006 that he sent to the Superior Court inquiring on the status of his motion. As Edwards notes, we have no appellate jurisdiction over this motion at present.[14]

IX.

For all of the above reasons, we will affirm the rulings of the District Court in this matter.

---

[14] If Edwards wishes, this matter could be pursued via mandamus.