_____

No. 95-3780
_____

United States of America,    *
                             *    Appeal from the United States
          Appellee,          *    District Court from the
                             *    District of Minnesota
     v.                      *
                             *
Thomas Dale French,          *
                             *
          Appellant.         *

_____

Submitted: May 14, 1996

Filed: July 19, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, MAGILL, Circuit Judge, and
VAN SICKLE, Senior District Judge*

_____

VAN SICKLE, District Judge


I.   **BACKGROUND**

        Thomas Dale French in the late 1970's expanded from his
farming operation into a grain hauling business, and from that into
a grain buying business.  As a grain buyer, he was required by the
Minnesota Grain Buyers Act to be licensed and bonded.  He was first
licensed about July 1, 1983.

_____

     * The HONORABLE BRUCE M. VAN SICKLE, Senior United States
     District Judge for the District of North Dakota, sitting by
     designation.

By 1989, French was unable to pay his license fee and operated for a time without a license. He managed to renew his license through June 30, 1990. However, he continued to operate after July 1, 1990 without a license. He continued to represent to his customers, and in his advertising, that he was licensed. He often represented to his customers that he had sold the grain for a higher price than he actually received, and delayed, or completely failed to remit for sales to his customers. Among other things, French picked up grain and sold it without permission of an owner, and also altered weigh tickets to hide the actual place of sale of the grain.

French also converted grain which was pledged to the Commodity Credit Corporation (CCC). In one instance a farmer, Oleen, had been using French as his grain buyer for about ten years, and using the CCC as his financier during that time. In July, Mr. Oleen agreed to sell soybeans to French at $5.72 a bushel. He told French the beans were under a CCC loan, and, as usual, to pay off the loan and remit the balance to him. Oleen then called the local Agricultural Stabilization and Conservation Service (ASCS), which administered the CCC program, and received permission to sell the soybeans to French. The ASCS confirmed this permission in writing to Oleen, reminding him to, as usual, inform French of his obligation to remit directly to the CCC. The ASCS also sent to Oleen and French, by mail, copies of the marketing authorization. French received his copy, sold the soybeans and mailed Oleen a written copy of the transaction with the name of the buyer cut from the sales slip. And French, in writing, asserted that the loan, $8,687.51.00, had gone "to CCC." Two months later ASCS advised Oleen his loan had not been paid. Oleen demanded that French remit the loan to CCC and the balance to him. French wrote out a check to CCC which Oleen delivered to ASCS only to have it bounce. French declared bankruptcy December 14, 1990.

French was indicted in April, 1995 and charged with seven

2

counts of mail fraud in violation of 18 U.S.C. § 1341, and one count of agriculture conversion in violation of 15 U.S.C. §

714m(c) – The jury returned a verdict of guilty on all counts. French was sent to prison and restitution was ordered in the amount of $50,000.00 to be divided among the farmers who lost in excess of $238,000.

## II.  DISCUSSION

A. Motion for Acquittal

French claims that the district court erred in denying a motion for judgment of acquittal on Count I in that there was insufficient evidence that French caused the use of the mails for the purpose of executing a scheme to defraud.  In reviewing a motion for a judgment of acquittal the court examines the evidence in the light most favorable to the government, and gives the government the benefit of all reasonable inferences to be drawn from the evidence.  United States v. Freitag, 768 F.2d 240, 242 (8th Cir. 1985).  To uphold the conviction, the government must have produced sufficient evidence to allow the jury to find the elements of the offense beyond a reasonable doubt. Id.  A similar standard of review applies in challenges to the sufficiency of the evidence, United States v. Manzer, 69 F.3d 222, 226 (8th Cir. 1995), and the conviction will be upheld unless no reasonable fact finder could have found guilt beyond a reasonable doubt.  Id.

In the case of Oleen, for example, French well knew that if he sold the grain, Oleen his customer, would need to receive, in the mail, a form authorizing the sale of the mortgaged grain.  French also knew that it would be his duty to remit the amount owed to the CCC.  Both of these transactions were handled by mail.  Both parties knew and understood that this cross mailing was a basic element in the grain buying and selling transaction.  The order denying the motion for acquittal on count one is affirmed.

B.  Defendant's Proposed Instruction

4

Appellant asserts that the district court erred in refusing to give the defendant's proposed instruction as to the elements of

mail fraud. The key language in the instruction which the defendant protests is the phrase "that the mails were used in furtherance of some essential step in the scheme." The defendant feels that the language should have been "that the mails were used for the purpose of executing the scheme." The statute involved is 18 U.S.C. § 1341. It contains the language "for the purpose of." Appellant claims that the language "in furtherance of" reduces the burden of proof imposed upon the prosecution by the statute. The court had used the Eighth Circuit Model Jury Instruction which adopts the language "in furtherance of." The entire instruction was taken verbatim from the Eighth Circuit Model Jury Instructions and reads as follows:

> In order to sustain its burden of proof for the crime of mail fraud as charged in counts 1-7 of the indictment, the government must prove the following four essential elements beyond a reasonable doubt:
>
> First: The defendant voluntarily and intentionally devised or made up a scheme to defraud farmers of money or property by means of false representations, or promises as set forth in the indictment;
>
> Second: The defendant did so with the intent to defraud;
>
> Third: It was reasonably foreseeable that the mails would be used; and
>
> Fourth: The mails were used in furtherance of some essential step in the scheme.

Eighth Circuit Model Jury Instructions, 6.18.1341 (1996).

In Pereira v. United States, 347 U.S. 1 (1954), the mail fraud statute is discussed in some depth. The Supreme Court pointed out that it is not necessary to show that the petitioners actually mailed or transported anything themselves; it is sufficient if they caused it to be done. Id. at 8. Further, it is not necessary that the schemes contemplate the use of the mails as an essential element. Where one does an act with the knowledge that the use of

6

the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually

intended, then he "causes" the mail to be used.  Id. at 8-9.  Given the established interpretation of the statute, the use of the phrase "in furtherance of," as contrasted to the use of the phrase "for the purpose of," is easily seen as the preferred choice of language, and the district court's use of the Eighth Circuit instruction is not an abuse of discretion.

C.  Alleged Prosecutorial Misconduct

Finally, the Appellant asserts that the district court erred by denying French's motion for mistrial because the prosecutor stated during closing argument that "I think it is fair for you to conclude that he [the defendant] was lying to you."

It does not appear that the prosecutor engaged in any misconduct.  However, even if this statement could be considered misconduct, this court would still affirm the denial of the motion for mistrial.  If prosecutorial misconduct allegedly has occurred, a reviewing court looks into its prejudicial impact by assessing the cumulative effect of the misconduct, determining if the court took any curative actions, and gauging the strength of the evidence against the defendant in the context of the entire trial.  United States v. O'Connell, 841 F.2d 1408, 1428 (8th Cir. 1987) , cert. denied, 488 U.S. 1011 (1989).  This court applies the harmless error rule, Fed.R.Crim.P. 52(a) , and will only reverse "if the improper remarks could reasonably have affected the jury's verdict." Id. at 1429. See United States v. Peyro, 786 F.2d 826, 831-32 (8th Cir. 1986) (holding that while prosecutor engaged in unprofessional conduct, reversal was not required since the jury was not affected by the improper comment made during closing argument).

While the prosecutor may have, indirectly, been expressing his own opinion, he was primarily leaving to the jury the question of the defendant's credibility.  The Eighth Circuit has denied a reversal of a conviction when a prosecutor has used stronger and

8

more personal language.  <u>Peyro</u>, 786 F.2d at 831-32 (finding that no

reversal was required though prosecutor had made statements such as "The man is an obvious liar."). Furthermore, the district court, during his delivery of the final instructions, cautioned the jury to disregard the prosecutor's statement.  The evidence against the defendant on all the counts of mail fraud was quite strong. Therefore, the prosecutor's statement did not affect the verdict, and the conviction must stand.

The defendant's conviction is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT