**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3033

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　Appellee,　　　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　Eastern District of Missouri.
Geno L. Armstrong, also known　　*
as Leon Macon,　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　Appellant.　　　　　　*

_____

Submitted:  February 12, 1997

Filed:  April 25, 1997

_____

Before BOWMAN and WOLLMAN, Circuit Judges, and BOGUE,[1] District Judge.

_____

BOWMAN, Circuit Judge.

Geno Armstrong was found guilty by a jury on charges of possession with intent to distribute cocaine base, see 21 U.S.C. § 841(a)(1) (1994), carrying a firearm during and in relation to a drug trafficking crime, see 18 U.S.C. § 924(c)(1) (1994), and being a felon in possession of a firearm, see 18 U.S.C. § 922(g)(1) (1994).  The District Court[2] entered judgment on the verdicts and

---

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

sentenced Armstrong to concurrent terms of 180 months and 120 months, and a consecutive sentence of sixty months. Armstrong appeals, raising two issues. We affirm.

First, Armstrong alleges reversible prosecutorial misconduct as a result of comments made during the government's opening statement. Assuming the comments at issue were improper, we nevertheless conclude that any error was harmless.

Before trial, the parties agreed that a stipulation would be read to the jury that itemized three previous felony convictions from Armstrong's criminal record. By so stipulating, Armstrong received the benefit of the government's agreement not to put on evidence of these prior convictions for purposes of proving the felon in possession charge.[3] (The government also agreed to drop Armstrong's alias from the charge, so that the jury would not be aware that he was known by another name.)

As trial began, the prosecutor in his opening statement made certain comments concerning Armstrong's criminal record. Specifically, Armstrong objected to the comment that "[t]his case is about a previously convicted drug dealer who packs a pistol." Trial Transcript vol. 2 at 42. The court sustained the objection, but denied Armstrong's request that the jury be instructed to disregard the comment, noting, "I think it will call more attention to it if we do it that way. I'm afraid that if we do that they're going to know that the issue is there. . . . I think it will make

_____

[3]Armstrong's trial was held prior to the Supreme Court's decision in Old Chief v. United States, 117 S. Ct. 644 (1997), wherein the Court held that a district court abuses its discretion when it allows the government to put on evidence of prior convictions for purposes of proving a 18 U.S.C. § 922(g)(1) charge if the defendant offers a properly-framed admission to the prior convictions.

the issue, fix the issue more deeply in their minds." Id. vol. 2 at 43-44. The other remark on which Armstrong's argument focuses was made a moment later when the prosecutor said, "The Government believes that the evidence will show that the Defendant, Geno Armstrong, was convicted of a drug violation in St. Louis . . . ." Id. vol. 2 at 45. Counsel objected, and the jury was sent out while the parties and the judge conferred. The court told the prosecutor that he could "say the evidence will show [Armstrong] has three prior convictions," but cautioned that the government would not be permitted to argue or to "go through each piece of evidence here." Id. vol. 2 at 46. Defense counsel did not move for a mistrial and the trial proceeded.

Ordinarily, our review consists of two parts: we first consider whether the remarks were in fact improper and then, if they were improper, whether the remarks so prejudiced the defendant's rights as to deny him a fair trial. See United States v. Stands, 105 F.3d 1565, 1577 (8th Cir. 1997).

In response to Armstrong's claim, the government first contends that the remarks in question were not improper. According to the government, the comments were not argumentative and merely stated facts that related to the felon in possession charge--facts that later would be in evidence via the reading of the stipulation. We need not disturb the District Court's conclusion that the form of the comments, at least, was objectionable. We will assume that the remarks were improper and proceed to the second part of the test.

We consider three factors when deciding whether the error--the allegedly improper comments--could have affected the jury's verdict or whether it was in fact harmless. United States v. French, 88 F.3d 686, 689 (8th Cir. 1996) (noting harmless error standard of

-3-

review).  First, we evaluate "the cumulative effect of the misconduct."
Id.  Although Armstrong's counsel objected throughout the prosecutor's
opening statement, there were only three objections specifically related
to this issue (one of which was overruled), and only the two comments
quoted above are cited to us as reversible error.  Because the remarks were
limited, and they occurred at the earliest stage of the trial, we think
their cumulative effect was insignificant.

Next we look to whether "the court took any curative actions."  Id.
The District Court specifically declined to give an instruction to
disregard, thinking that it would only draw more attention to the fact that
Armstrong previously had been convicted on drug charges.  We think the
court properly exercised its discretion in refusing a special instruction,
and otherwise took appropriate measures to be certain the problem did not
recur.  The court advised the prosecutor after the second sustained
objection to avoid arguing the specifics of the convictions, and thereafter
the prosecutor made no more objectionable statements about Armstrong's
prior convictions.

Finally, "gauging the strength of the evidence against [Armstrong]
in the context of the entire trial," id., we conclude that the evidence was
overwhelming.  Armstrong was first detained by police as he stepped from
a taxicab, and a search of the vehicle revealed crack cocaine and a gun.
Armstrong was essentially caught red-handed, and the government's case
against him was very strong.  Further, at the end of the trial, just before
jury deliberations began, the prosecutor read into the record the
stipulation of the parties that Armstrong had been convicted of the sale
or possession of drugs on three prior occasions--the very subject of the
prosecution statements to which defense counsel had objected.

In sum, the cumulative effect of the comments was negligible, the curative action was adequate in the circumstances, and the evidence of Armstrong's guilt was compelling.  See United States v. Abrams, 108 F.3d 953, ___ (8th Cir. 1997) ("the cumulative effect of the misconduct is minimal in light of the strength of the properly admitted evidence of guilt . . . and the fact that the district court took no curative action sua sponte [to grant a mistrial] did not deprive [defendant] of a fair trial").  We therefore hold that any error in the portions of the prosecutor's opening statement at issue here was harmless to Armstrong's rights.

For his second issue on appeal, Armstrong claims that he was denied his Sixth Amendment right to counsel when the District Court refused his request to substitute retained counsel for the appointed federal public defender who had been representing him.  We first review the circumstances surrounding this claim.

Armstrong's original trial date was April 1, 1996, but trial was continued until Monday, April 15, 1996.  Armstrong was not present in the courtroom at nine o'clock on April 15 when jury selection was scheduled to begin, so the start of trial was continued until one o'clock, at which time Armstrong appeared.  On that date, Armstrong had been and continued to be represented by a federal public defender.  In an exchange with the court during the morning of April 15 when Armstrong was absent, the court told the public defender that it had come to the court's attention "over the past week" that Armstrong's "family or somebody was seeking to obtain substitute counsel in this case."  Trial Transcript vol. 1 at 6.  The public defender acknowledged that she was aware that other counsel had been contacted, but she still believed herself to be counsel of record.

In the afternoon, the federal public defender told the court that Armstrong had informed her that he had retained other counsel, but that the substitute counsel was unable to appear that afternoon for trial. The court noted on the record that the purported retained counsel had not entered an appearance, nor was he present in court. Further, there was no guarantee that such substitute counsel would either enter an appearance or show up in court in the future. When queried, Armstrong told the court he had hired new counsel and said, "I paid him Friday and I went over there today at 12:00 and he told me he wouldn't make it today because he was at another trial today and I feel like I would get better service out of him." Id. vol. 1 at 11. The court ruled that the trial would go forward without a change of counsel, and it did. Armstrong claims this decision denied him his right to retained counsel of his choice. We review for abuse of discretion. See United States v. Grady, 997 F.2d 421, 423-24 (8th Cir.), cert. denied, 510 U.S. 958 (1993).

"Last-minute requests to substitute defense counsel are not favored." United States v. Klein, 13 F.3d 1182, 1185 (8th Cir.), cert. denied, 512 U.S. 1226 (1994). Given the eleventh-hour nature of Armstrong's request (and ignoring for the moment that counsel had not even entered an appearance) and the fact that a continuance would have been necessary if counsel had been substituted, Armstrong was required to demonstrate "a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between" himself and his counsel of record. Id. (citations to quoted cases omitted). While the court might have made a deeper inquiry into the nature of Armstrong's dissatisfaction with the federal public defender, there is no indication in the record or in Armstrong's brief that the relationship between Armstrong and his counsel approached the level of conflict required for last minute substitution of counsel. Balancing Armstrong's "right to counsel

-6-

of his choice and the public's interest in the prompt and efficient administration of justice," United States v. Swinney, 970 F.2d 494, 499 (8th Cir. 1992) (quoting Wilson v. Mintzes, 761 F.2d 275, 280 (6th Cir. 1985)), cert. denied, 506 U.S. 1011 (1992) and 507 U.S. 1007 (1993), we cannot say that the District Court in these circumstances abused its discretion in denying Armstrong's request to substitute counsel.

The facts of this case are strikingly similar to those reported in United States v. Vallery, 108 F.3d 155 (8th Cir. 1997). In Vallery, the defendant was represented by appointed counsel. On the day set for trial, which had been reached only after several delays, the defendant asked the district court to allow him to retain his own counsel. The court refused and the case proceeded. After voir dire, the defendant agreed to plead guilty but then tried to withdraw his plea before sentencing, arguing "that he was forced to plead guilty to avoid going to trial with counsel he did not believe would zealously represent his interests." 108 F.3d at 157.

This Court held that defendant's right to counsel was not violated, and therefore that his guilty plea should stand. As the Court explained, "[T]he right to retain counsel of one's choice is not absolute" and cannot be permitted to "obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice." Id. Although in this case, unlike the situation in Vallery, Armstrong represented to the District Court that he already had retained counsel, that attorney, who was known to the court, had not even entered an appearance notwithstanding his familiarity with federal court practice.

We hold that the District Court did not abuse its discretion in requiring Armstrong to go to trial represented by his appointed counsel.

The judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT