**ANSELMO FARRINGTON, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2010-0030

Supreme Court of the Virgin Islands

August 23, 2011

RENEE M. ANDRE, ESQ., Law Offices of Marjorie Roberts, PC, St. Thomas, USVI, *Attorney for Appellant*.

MATTHEW PHELAN, ESQ., Department of Justice, St. Thomas, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(August 23, 2011)

SWAN, J. The Appellant, Anselmo Farrington, urges this Court to vacate his convictions on one count of Third-Degree Robbery and two counts of Grand Larceny. Farrington argues that he was deprived of his Sixth Amendment right to a fair trial when a friend and two family members were allegedly prohibited from entering the courtroom during the *voir dire* proceedings. Farrington also argues that comments made by the prosecutor during closing arguments were improper and deprived him of his right to a fair trial. Because there are insufficient facts before us to determine whether there was a Sixth Amendment public trial violation, we will remand this case to the Superior Court for that court to conduct

an evidentiary hearing and make findings of fact on the alleged denial of public access to the courtroom during the *voir dire* proceedings. We affirm the judgment of the Superior Court on the remaining issue.

## I. FACTS AND PROCEDURAL HISTORY

The facts pertaining to Farrington's convictions are as follows. On Monday, August 24, 2009, Trevorn Lake and his two friends, Jordan and Janiah,[1] were approaching a shoe store located in a shopping mall when Farrington came up to them and asked Jordan if he wanted to sell his neck chain. Jordan said no. Farrington, also known by the sobriquet "Cobra," was wearing a black shirt, black "Dickies" pants with a red bandana in the pocket, black and red "Jordan" sneakers, a black and red cap with the letter "C" on the front of it, a name plate earring with the name "Cobra" on it, and a "Gucci" chain.

Trevorn, Jordan, and Janiah then entered the shoe store and shortly after entering encountered Farrington in the same store. After purchasing a pair of shoes, Trevorn and his friends exited the store and promenaded around the mall. They recognized Farrington again when they exited the mall to wait for a safari taxi.[2] While boarding the safari taxi, the three boys saw Farrington enter a black Toyota Corolla. When the safari taxi stopped a short while later, Farrington, who was apparently following in the Toyota, boarded the safari taxi and attempted to grab Jordan's chain. Jordan tried to prevent Farrington from taking his chain. After the unsuccessful attempt to remove the chain from Jordan's neck, Farrington reached for the chain Trevorn was wearing. An altercation immediately ensued among the three boys and Farrington and culminated when Farrington fell out of the safari taxi while holding and yanking the chain from Trevorn's neck. Farrington then hurriedly departed the scene in the black Toyota. Trevorn's father was the owner of the chain that Farrington stole.

While still on the safari, Trevorn telephoned his older brother, Javerne Lake, and told him about the incident with Farrington. After Trevorn and

---

[1] Janiah's friends refer to him as Jacoi in certain parts of the transcript; however, we will refer to him by his proper name, which is Janiah.

[2] A safari taxi is an open-sided vehicle used for transportation. Passengers are able to easily enter and exit on the left side of the vehicle because there are no doors. The safari taxi referenced in this Opinion is used by locals as a form of public transportation and makes frequent bus-route-like stops to pick up and drop off passengers.

his friends arrived where Javerne was located, Javerne, accompanied by the three boys drove to the mall. At the mall, they returned to the shoe store the boys had visited earlier and asked the owner for permission to review tapes from the store's security video cameras. After watching the video tapes, Javerne identified Farrington, whom he knew, as the person who the boys indicated had assaulted Trevorn. They then immediately left the mall and drove to a nearby housing project where they believed Farrington might be located.

When they arrived at the housing project, they saw Farrington outside near the street with other persons. Javerne asked Trevorn if the person near the street, who Javerne recognized as Farrington, was the same person who took the chain. Trevorn answered yes. Javerne then exited his vehicle and approached Farrington who, according to Javerne, was wearing the same clothing and jewelry Trevorn had described and was the same person they saw in the store's video tapes, except that he was no longer wearing the hat with the letter "C" on it. Farrington was also wearing a neck chain identical to the one taken from Trevorn during their altercation on the safari taxi. Javerne was able to identify the chain by its unique links and by an extra "hand chain" that was attached to it to make the chain longer. Javerne informed Farrington that the person he robbed earlier was his brother and asked Farrington to return the neck chain. Farrington initially acted confused about what chain Javerne was referencing and then he inquired as to whether Javerne was going to call the police about the chain. At that time, Farrington's companions, who were sitting behind him, approached the area where Javerne and Farrington were conversing. Javerne then decided to leave the area.

The incident on the safari taxi was reported to the police authorities. Trevorn identified Farrington from a book of photographic "mug shots" as the person who robbed him. Farrington was arrested and charged in a three-count Information with one count of Third-Degree Robbery in violation of title 14, section 1864 of the Virgin Islands Code, and two counts of Grand Larceny in violation of title 14, section 1083(1) and (2) of the Virgin Islands Code. (Appellant's Br. 2.) On January 22, 2010, the jury found Farrington guilty on all three counts. (*Id.*) Ten days later, on February 1, 2010, Farrington filed a Motion for New Trial, alleging that his mother was prohibited from entering the courtroom during the *voir dire* proceedings. On March 9, 2010, the trial court entered an Order denying that motion without prejudice. In a Memorandum Opinion of the

same date, the trial court stated that to its knowledge no person had been excluded from the courtroom and that no order had been issued denying public access to the proceedings. The trial court denied the motion without prejudice for lack of a sufficient evidentiary showing to support the claim of a public trial violation. On April 14, 2010, Farrington filed a Renewed Motion for a New Trial which included affidavits from family members and a friend who asserted that they were prohibited from entering the courtroom during the *voir dire* proceedings. On May 12, 2010, the trial court denied the Renewed Motion for a New Trial for the same reasons elucidated in its previous order. This appeal ensued.

## II. JURISDICTION

Title 4, section 32(a) provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." On June 24, 2010, the trial court entered a final Judgment and Commitment Order affirming Farrington's convictions. Therefore, we have jurisdiction to consider this appeal.

## III. STANDARD OF REVIEW

The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the Superior Court's findings of fact are reviewed for clear error. *Simmonds v. People*, 53 V.I. 549, 555 (V.I. 2010)

## IV. DISCUSSION

Farrington presents four issues on appeal; however, we consider the issues regarding the sufficiency of the evidence and the identification of the defendant to have been waived because Farrington presented no argument concerning these issues in his brief filed in this Court as required by Virgin Islands Supreme Court Rule 22(a)(5).[3] *In re Guardianship of Smith*, 54 V.I. 517, 524 (V.I. 2010); *See also, Nagle v.*

---

[3] Rule 22 of the Virgin Islands Supreme Court Rules states:

(a) . . . . The brief of the Appellant shall contain under appropriate headings . . . :

. . . .

(3) A statement of the issues to be presented for review.

. . . .

649

*Alspach*, 8 F.3d 141, 143 (3d Cir. 1993). Therefore, we will only address Farrington's allegations regarding a Sixth Amendment right violation and improper comments made by the prosecutor during closing arguments.

### A. We are unable to determine whether Farrington was denied his Sixth Amendment right to a public trial because there are insufficient facts before us to make such a determination

■ Farrington argues that the trial court deprived him of his Sixth Amendment constitutional right to a public trial when court personnel refused to allow his family members and a friend to enter the courtroom during the *voir dire* proceedings. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. CONST. amend. VI.[4] The United States Supreme Court has held that court proceedings must be open to the public not only to vindicate the rights of the defendant, *Gannett Co. v. DePasquale*, 443 U.S. 368, 379-80, 99 S. Ct. 2898, 61 L. Ed. 2d 608 (1979), but also to give the public comfort in knowing that justice is being properly served, *Waller v. Georgia*, 467 U.S. 39, 46, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984).

■ For Sixth Amendment purposes, the defendant can invoke the right to a public trial in the preliminary stages of his trial. *Presley v. Georgia*, 130 S. Ct. 721, 723, 175 L. Ed. 2d 675 (2010) (citing *Waller*, 467 U.S. at 46) (noting that the Sixth Amendment right to a public trial extends beyond actual proof at trial and includes preliminary proceedings such as a suppression hearing). More specifically, the United States Supreme Court has unequivocally stated that the Sixth Amendment right to a public trial is applicable to *voir dire* proceedings; therefore, public access to the

---

(5) An argument. The argument may be preceded by a summary. The argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, and parts of the record relied on.

V.I.S.CT. R. 22(a)(3), (5).

[4] The Sixth Amendment is made applicable to the Virgin Islands by section 3 of the Revised Organic Act of 1954, which states in part:

> The following provisions of and amendments to the Constitution of the United States are hereby extended to the Virgin Islands to the extent that they have not been previously extended to that territory and shall have the same force and effect there as in the United States or any State of the United States: . . . the first to ninth amendments inclusively . . . .

Revised Organic Act of 1954 § 3.

courtroom during *voir dire* should be allowed. *Presley*, 130 S. Ct. at 723 (citing *Press-Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 505, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984)).

 The United States Supreme Court has recognized that some circumstances may arise where courtroom closure is warranted. *Presley*, 130 S.Ct. at 723. However, the Court has emphasized that if such circumstances arise, closure will only be justified in instances where the trial court applies and satisfies the standards for public closure that have been articulated by the United States Supreme Court, which are as follows:

> [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced; [2] the closure must be no broader than necessary to protect that interest; [3] the trial court must consider reasonable alternatives to closing the proceedings; and [4] it must make findings adequate to support the closure.

*Id.* (citing *Waller*, 467 U.S. at 48).

In his appeal, Farrington avers that some family members and a friend were prohibited from entering the courtroom during the *voir dire* proceedings. To support his allegations, Farrington provides this Court with copies of his two motions for a new trial and the two trial court opinions addressing the motions for a new trial. In his first Motion, which was filed on February 1, 2010, or exactly ten days after the guilty verdicts, Farrington asserts the following:

1. That on January 19, 2010, the above-styled case proceeded to trial.

2. That Ms. Cynthia Simon, the Defendant's mother, was prevented from entering the courtroom during *voire* [sic] *dire* and/or jury selection.

3. That Ms. Simon attempted to enter said courtroom and were [sic] precluded from entering the Courtroom until after the entire *voire* [sic] *dire* and/or jury selection process was complete.

(J.A. at. 10.) Farrington provided no further evidence of the circumstances surrounding the closure of the courtroom during the *voir dire* proceeding. In a memorandum opinion dated March 10, 2010, the trial court stated that it

651

did not "exclude anyone from the courtroom or issue an order denying access to the public." (*Id.* at 18.) Therefore, the trial court denied, without prejudice, Farrington's Motion for a New Trial and informed Farrington of its inability to rule on his Motion without evidence "other than the unsupported allegations of his motion." (*Id.*)

Thereafter, Farrington filed a Renewed Motion for a New Trial, including three affidavits: one from Ms. Simon and two additional affidavits from other individuals who allegedly were also precluded from entering the courtroom during the *voir dire* proceedings. The relevant portions of two of the affidavits submitted read as follows:

> I, [name of person submitting affidavit] hereby affirm as follows:
>
> 1. This Affidavit is written in support of the above-referenced case.
> 2. I am related to Anselmo Farrington.
> 3. On Tuesday, January 19, 2010, I attempted to enter the Courtroom during the jury selection and/or *voire*[sic] *dire* for the above-referenced case.
> 4. I was not permitted to enter said Courtroom during jury selection and/or *voire*[sic] *dire*.

(J.A. at 25-27.) The third affidavit was identical except for the second line, which read "I am *not* related to Anselmo Farrington." (*Id.* at 27.) (emphasis added). The differences between the original and Renewed Motion for a New Trial are that, in the latter, two additional persons made allegations of being denied access to the courtroom during Farrington's public trial and made sworn statements concerning their respective relationships to Farrington. These motions offer no additional facts that would assist in determining whether the courtroom was closed to the public during *voir dire*.

Nonetheless, Farrington argues that the affidavits submitted "present prima facie evidence that the public was excluded from the jury selection phase of [his] trial." (Appellant's Br. 9.) Farrington further argues that the trial court's assertion that it did not exclude anyone from the courtroom or issue an order denying public access to the courtroom during the *voir dire* is immaterial because "it is a well known fact within the Territory that the Superior Court marshal[s] prevent the public from entering the courtrooms during *voir dire*" and this conclusively indicates that his rights were violated. (Appellant's Br. 7.)

To support his contention that courtroom closure is possible even where a judge does not directly order such closure, Farrington relies on four United States Court of Appeals cases. However, these cases neither support his contention nor offer, under the facts of this case, any plausible argument that Farrington was deprived of his Sixth Amendment right to a public trial. We will examine two of the cases cited by Farrington. First, Farrington cites *United States v. Al-Smadi*, 15 F.3d 153 (10th Cir. 1994). In that case, there were specific findings of fact that a New Mexico trial court normally closes its courtroom to the public at 4:30 p.m., and consistent with this practice, the trial court did close its door to the public at 4:30 p.m. on the day in question. *Id.* at 154. Despite the specific finding that the courtroom was closed to the public, the Tenth Circuit affirmed the trial court's decision and held that "[t]he denial of a defendant's Sixth Amendment right to a public trial requires some affirmative act by the trial court meant to exclude persons from the courtroom." *Id.* While we do not seek to approve or disapprove of the Court's holding in the *Al-Smadi*, we note the circumstances that distinguish *Al-Smadi* from the circumstances in this case. It is undisputed that the trial court in *Al-Smadi* denied access to the public during *voir dire*, whereas in this case, the fact of whether the trial court denied access to the public during the *voir dire* proceeding is unresolved.

Second, in *Martineau v. Perrin*, 601 F.2d 1196, 1197 (1st Cir. 1979), the trial court ordered that the courtroom remain locked to the public during a suppression hearing. Counsel for the defendant did not object. *Id.* Thereafter, when the hearing commenced, the doors were continuously being unlocked and relocked by the court's marshal, although there was no further directive from the trial court. *Id.* Most notably, the facts in *Martineau* involved admitted exclusion of the public from access to the courtroom during proceedings:

> On March 15, the court learned for the first time from a court attendant that the outer doors to the courtroom were being unlocked and locked as each witness entered the courtroom and that the petitioner had complained about this. The court immediately ordered that the courtroom doors remain unlocked for the balance of the trial.

*Id.* Like *Al-Smadi, Martineau* presented undisputed factual findings that the courtroom was closed to the public. *Id.*

The factual circumstances of the seminal United States Supreme Court cases on this issue, namely *Press-Enterprise Co.* and *Presley*, are likewise distinguishable from the facts in this case. In both cases the trial courts made specific rulings which excluded individuals from the courtroom during the *voir dire* proceedings. Specifically, in *Press-Enterprise*,

> [Petitioner] moved that *voir dire* be open to the public and the press. . . . The State opposed petitioner's motion, arguing that if the press were present juror responses would lack the candor necessary to assure a fair trial.

464 U.S. at 503. The trial court agreed [with the state] and permitted petitioner to attend the 'general' but not 'individual' *voir dire* proceedings. *Id.* Likewise, in *Presley* the trial court gave specific instructions to an individual attempting to enter the courtroom during the *voir dire* proceedings.

> Well, you still can't sit out in the audience with the jurors. You know most of the afternoon actually we will be picking a jury. And we may have a couple of pre-trial matters, so you're welcome to come in after we . . . complete selecting the jury this afternoon. But otherwise you would have to leave the sixth floor, because jurors will be all out in every hallway in a few moments. That applies to everybody who has a case.

130 S. Ct. at 722. Thus, in both of these decisions it is evident that the trial courts gave a directive, preventing members of the public from sitting in the courtroom during the *voir dire* proceedings. However, in Farrington's case there is no evidence of a directive from the trial court, from a courtroom marshal, from the clerk of the court, or from any other court personnel to close the courtroom during the *voir dire* proceedings.

Additionally, in *Press-Enterprise* and *Presley*, the attorneys objected to the exclusion of the public from the courtroom at the time of the *voir dire* proceedings or at some juncture during the court proceedings. *Press-Enterprise*, 464 U.S. at 503-04; *Presley*, 130 S. Ct. at 722. In this case, however, there is no evidence that Farrington ever objected or informed the trial judge of the prohibited access to the courtroom until he filed his Motion for a New Trial, ten days after the guilty verdicts. We do not hold that an objection during trial is necessary in all cases to establish

a violation of a Sixth Amendment right;[5] however, if an objection had been made during the *voir dire*, the record may have disclosed some factual basis to determine whether the trial court was informed of a possible Sixth Amendment violation. There is nothing in the record before us to suggest either that the alleged closure of the courtroom during *voir dire* was brought to the trial court's attention, or that the trial court had notice of the alleged courtroom closure before or during the *voir dire* proceedings. At any of these stages of the trial, the trial court would have been afforded the opportunity to cure or rectify any alleged violation of a constitutional right.

 While the finding of whether a defendant's Sixth Amendment rights were violated may not hinge on an affirmative court directive, there must be adequate facts to confirm that the public was excluded from the *voir dire* proceedings. *See Huggins v. Gov't of the V.I.*, 47 V.I. 619, 629 (D.V.I. App. Div. 2005). The requirement that a defendant asserting a violation of public trial rights must come forward with probative evidence is essential to protect the justice system from abuse by defendants and attorneys making meritless and frivolous accusations of Sixth Amendment right violations without providing sufficient evidence that such violations actually occurred. *Id.* Unsupported affidavits from persons who are alleging courtroom closure and asserting that what allegedly occurred is the normal practice at the Superior Court are insufficient to support such findings. Confronted with the paucity of information in the record, if we conclude that Farrington's Sixth Amendment rights were violated, we would establish a precedent whereby a defendant can allege at the conclusion of his trial that he was denied his Sixth Amendment right to a public trial without providing an adequate factual basis. Accordingly, we conclude that an evidentiary hearing is needed to determine the crucial facts pertaining to the alleged courtroom closure during the *voir dire* proceedings. Therefore, this case will be remanded to the Superior Court for that Court to conduct a hearing and make findings of fact regarding the alleged courtroom closure.

---

[5] *See generally, Walton v. Briley*, 361 F.3d 431, 434 (7th Cir. 2004) (holding that defendant's right to a public trial was not waived by failing to object at trial).

## B. The prosecutor's comments during closing arguments were not improper

■ Farrington also argues that comments made by the prosecutor during closing arguments were improper and deprived him of his right to a fair trial. (Appellant's Br. 12.) To obtain a reversal based on prosecutorial misconduct to which there was a proper objection, a defendant must show that: (1) the prosecutor's conduct or remarks were improper, and (2) the conduct or remarks affected the trial in a manner that made the trial unfair and affected the defendant's substantial rights. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974). Farrington's attorney objected to both comments at trial. (*Id.* at 429, 436.)

### 1. First Comment

The first comment made by the prosecutor for which Farrington argues was improper was as follows:

> You heard her son, Javerne Lake, testify as to it being a Cuban link, how it was cut on both sides. You heard him how he say that he's never seen any — he's never seen someone else with that type of chain on St. Thomas. The mother also stated that she hasn't seen anyone else with that type of chain on St. Thomas. Ladies and Gentlemen of the Jury, we submit that it would be so highly coincidental that — let me put it this way. Why would Trevorn Lake want to make up a story —

(J.A. at 429-30.) Farrington argues that the statement, "Why would Trevorn Lake want to make up a story," (J.A. at 430), "was improper because it ask[ed] the jury to speculate as [to] the witnesses' [sic] motive to commit perjury." (Appellant's Br. 14.)

■ Courts have held that it is improper for an attorney to vouch for the credibility of a witness. *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980). The Third Circuit has concluded that "vouching constitutes an assurance by the prosecuting attorney of the credibility of a government witness through personal knowledge or by other information outside of the testimony before the jury." *United States. v. Walker*, 155 F.3d 180, 184 (3d Cir. 1998) (additional citation omitted) Thus, as the United States Supreme Court has noted, there is no vouching unless the prosecutor

suggests to the jury that the witness is telling the truth because of personal knowledge the prosecutor has about the witness' testimony or ability to be truthful. *United States v. Lawn*, 355 U.S. 339, 359 n.15, 78 S. Ct. 311, 2 L. Ed. 2d 321 (1958). A prosecutor's vouching for the credibility of a government witness raises two concerns: (1) such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and (2) the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence. *Walker*, 155 F.3d at 184 (citing *United States v. Young*, 470 U.S. 1, 18, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985)).

■ The first comment made by the prosecutor in this case does not constitute vouching. There was no insinuation that the prosecutor, for some reason outside of the evidence, knew that Trevorn was telling the truth. The comment regarding Trevorn's motive is identical to the comment made by the prosecutor in *Walker*, in which the prosecutor stated:

> Now, ask yourselves what motivation would Officer Robert Scott and former Officer Raymond Dubois have to come in here and lie to you. What motivation. I submit to you that they have no motivation to lie to you. I submit to you that you can determine, using your common sense and your judgment, you can determine the credibility of those two and the only two eyewitnesses to the search . . .

*Walker*, 155 F.3d at 184 (emphasis omitted). In *Walker*, the Third Circuit found that the prosecutor's comment did not constitute vouching. Similarly, in *United States v. French*, 88 F.3d 686, 688 (8th Cir. 1996), the prosecutor stated in his closing argument "I think it is fair for you to conclude that he [the defendant] was lying to you." In that case, the Eighth Circuit found that the prosecutor did not engage in any misconduct. *Id.* More specifically, the Court noted that "[w]hile the prosecutor may have, indirectly, been expressing his own opinion, he was primarily leaving to the jury the question of the defendant's credibility." *Id.* at 689.

We find that the statement made by the prosecutor in *French* is analogous to the statement made by the prosecutor in this case. Here, the

prosecutor stated, "Why would Trevorn want to make up a story?" This question is open-ended and places the issue of motive within the consideration of the jury. Undoubtedly, Trevorn was the prosecution's witness, and it is logical that the prosecutor's closing argument would be fashioned to convince the jury to consider favorably the facts as presented by the People. However, neither the form nor the direct meaning of the question indicates that the prosecutor was giving even a mere opinion about the witness' credibility or veracity. Likewise, the prosecutor's comments did not suggest that because Trevorn is a government witness his testimony is more credible. Rather, the prosecutor's question recognizes that it is the jurors who must form an opinion as to why Trevorn would make up a story.

### a. Second Comment

Farrington also argues that a second comment by the prosecutor,

> So, if Detective Allen took the earring back in March, then . . . Mr. Farrington couldn't have it on August 24th, so therefore, all of our Government witnesses are lying. Ladies and Gentlemen on the jury, we submit to you that in the choice of believing who is telling the truth and who is not telling the truth, that the testimony of —

(J.A. at 436), was improper because "the prosecutor cannot ask the jury to determine who was lying as it is not the test for the jury to convict a criminal defendant" (Appellant's Br. 15). To support this argument, Farrington further states that "[i]mplicit in the prosecutor's comment was that the test for deciding if Farrington was guilty is if the government witnesses were lying," and that this comment was improper because it "invites the jury to convict the defendant for a reason other than his guilt of the crimes charged." (*Id.*)

██ ██ It is well established that credibility determinations are within the province of the jury or a judge sitting as the fact finder. *Defraites-Bergin v. Board of Directors of Burnett Towers Condo. Ass'n*, S. Ct. Civ. No. 2007/81, 2008 V.I. Supreme LEXIS 22 at *7, 8 (V.I. Aug. 14, 2008) (citing *United States v. Kole*, 164 F.3d 164, 177 (3d Cir. 1998). This means that the jury would make determinations as to who is telling the truth, or rather whom they believe. Such a determination would lead to a guilty or not guilty verdict. Therefore, the prosecutor's statement regarding the jury choosing who is telling the truth was not misleading or

incorrect because a jury's determination as to who is lying and who is not lying is inherent in its role as fact finder.

 Additionally, we find that the instructions to the jury were sufficient to properly inform the jury of what to consider in arriving at its verdicts, thereby obviating any confusion regarding the prosecutor's comments on the testimony of government's witnesses. Furthermore, reversal is not necessary where the statements are based on information before the court, where the trial court gave curative instructions regarding the statements and where there is overwhelming evidence to support the conviction. *United States v. Gallagher*, 576 F.2d 1028, 1041-43 (3d Cir. 1978). With all these factors present, there is no reason to reverse Farrington's guilty verdicts on this issue.

## V. CONCLUSION

For the above reasons, we will remand this case to the trial court for an evidentiary hearing on the issues of whether persons of the general public were prohibited from entering the courtroom during the *voir dire* proceedings and whether Farrington's Sixth Amendment right was violated. However, we also conclude that no error was committed by the trial court in failing to grant a new trial because of the prosecutor's comments during his summation to the jury.